IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:17-CV-21559-KMW

MENUDO INTERNATIONAL, LLC,
A Florida LLC,

    Plaintiff,

v.

IN MIAMI PRODUCTION, LLC,
A Florida LLC,
MARIA CRISTINA BRAUN, an individual,
CHARLIE MASSO, an individual,

    Defendants.
_____

**PLAINTIFF'S POST-HEARING MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTION**

Plaintiff, Menudo International, LLC ("International") files this Post-Hearing Memorandum of Law in support of it's Motion for Temporary Injunction and in support thereof states, as follows:

**OVERVIEW**

International has invested close to $500,000 acquiring, promoting and developing the registered trademark and the common-law rights to the mark "Menudo" (the "Mark"). Defendant, Braun knew that International and it's predecessor, Menudo Entertainment, LLC ("Entertainment") owned these rights because she negotiated to acquire a license for use of the Mark in Mexico and she then attempted to obtain a license for use of the Mark in the United States. However ("as a savvy businesswoman")[1], she simply determined the registration of the Mark in favor of Menudo International "was fraudulent." She did not give any basis for her

---

[1] Braun testimony.

1

determination, nor did she disclose any background or experience which would enable her to make that determination. Rather, Defendant Braun decided she would take her chances and not acquire a license to use the Mark, which she admitted is valuable in order to generate publicity and ticket sales for her Tour of ex-Menudo band members, even though these former band members all signed contracts providing that they would not perform under the Mark.

Defendant admitted using the exact Mark "Menudo;" In the same the exact same font associated with the Mark, and using a competitive moniker "40th Anniversary Tour" to produce her own show. There has been substantial evidence of confusion amongst consumers, producers and promoters regarding who, International or Braun, owns the Mark and who has the rights to produce a Menudo 40th Anniversary Tour. This confusion was exacerbated when Braun and her lawyer wrote to International's business and contractual partners; claiming that she, and not International, owned the Mark. Over Defendants' protestations, the United States Patent and Trademark Office has issued two registrations in favor of International, one for "entertainment services" and one conditionally for "public performances" (so long as International produces a live performance before February 29, 2018) (P-Ex. 8).

International has filed a complaint for Trademark Infringement, Unfair Competition and False Description arising under §§ 31 and 43 of the Lanham Act, 15 U.S.C. §§ 1114(1) (Trademark Infringement) and §1125 (a) (Unfair Competition and False Description), for Unfair Business Practices arising under Florida Statutes §§ 495.131, 495.151 and under the common law. In order to obtain a temporary restraining order, International must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffer if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest."

2

Mangos *Tropical v. Mango Martini*, 844 F. Supp. 2d 1246 (S.D. Fla. 2011); *Herb Reed Enters., LLC v. World Famous Platters,* 2014 U.S. Dist. LEXIS 22046 (M.D. Fla. 2014); *Schiavo ex. rel Schindler v. Schiavo,* 403 F. 3d 1223, 1225-26 (11th Cir. 2005).

The Eleventh Circuit has acknowledged that "once a plaintiff establishes a likelihood of success on the merits of a trademark infringement there is a "presumption of irreparable harm." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.,* 522 F. 3d 1211, 1227 (11th Cir. 2008); *see also McDonald's Corp. v. Robertson,* 147 F. 3d 1301, 1310 (11th Cir 1998). As demonstrated, Defendants have caused and continue to cause irreparable injury to International's brand as a result of their misleading advertisements and marketing efforts, claiming the ex-band members remain as "Menudo."[2] *See* D-Ex. 14. Such harm cannot be fully remedied by money damages alone. *See Deerfield Medical Center v. City of Deerfield Beach,* 661 F. 2d 328, 338 (5th Cir. 1981). As the Eleventh Circuit has generally recognized in trademark infringement cases, "(1) there is no adequate remedy at law to address infringement and (2) infringement by nature causes irreparable harm." *Tally-Ho,* 889 F. 2d at 1029; *Carrillon Importers Ltd. v. Frank Pesce Group, Inc.,* 913 F. Supp. 1559 (S.D. Fla. 1996). Based on Defendants' purposeful infringement and actions taken with the intent to exploit International's Menudo Mark as her own, International has suffered irreparable injury to it's brand and reputation.

IN THIS MEMORANDUM, INTERNATIONAL WILL ADDRESS ONLY THE SPECIFIC ISSUES RAISED BY THE DEFENDANTS DURING THE INJUNCTION HEARING

### I. The Injury to International from Defendants' Misconduct Outweighs Any Impact that an Injunction May Cause Defendants

On June 12, 2017, International entered into an agreement with Trading Connections regarding a Menudo 40th Anniversary Tour (P-Ex. 9). On July 7th, 2017 and July 11th, 2017,

---

[2] Braun admitted that her shows and tour could not have been as successful had she accurately promoted her band and tour as "Ex Menudo Members" or "formally of Menudo."

3

Defendants and their counsel sent notice to concert promoters that refer to International as "Defendants" stating that they are going to lose the rights to their trademark (Plaintiff's Exhibit's 25 and 29). As a result, Trading Connections backed out of their agreement with International due to confusion over the proper ownership of the Mark. Hence, International was/is unable to put on the Menudo 40th Anniversary Concert Tour at a loss of a minimum of $250,000 in revenue, on top of the $480,000 that International has invested to date.[3] This testimony is unrebutted. The USPTO determined that Plaintiff owns title to the Trademark "Menudo" for purposes of live performances so long as they use the Mark before February 29, 2018 (P-Ex. 8)[3]. It will be much more difficult (if not impossible) to accomplish this, if Defendants are allowed to use the exact same Mark[3]. As stated previously, Defendants have admitted that using the Mark due to its value will generate publicity and ticket sales, and that there has been substantial confusion amongst consumers, producers and promoters if there are competing live performances under the same name, especially if both use the same font (*See* Defendants' Ex. 14) and both advertise their tour as the "40th Anniversary Tour." (*See* P-Ex. 25 and 29)[3]. Hence, any harm to International outweighs any harm to Defendant.

## II.     International (and it's predecessor Menudo Entertainment) did not Abandon the Trademark "Menudo"

Despite the evidence of continuous use by Entertainment and then, International, Defendants claim "abandonment," based solely upon the fact that there has not been a live performance of a band since 2008. By this argument, Defendants ignore Entertainment and International's use in commerce in other venues and means, and it ignores the central issue: intent.

---

[3] Paul Tarnopol testimony.

Pursuant to 15 USC §1527, Defendants bear the burden to show an "abandonment." In order to show abandonment, Defendants, have to show both no commercial use of the Mark *and* no intent to use the Mark. International presented unrebutted evidence that from 2009 until 2016, Entertainment continuously exploited the Mark in commerce in venues and through means other than in a live performance and it presented unrebutted evidence of Entertainment's intent to use and exploit the Mark in commerce continuously, without interruption from 2009-2016. During this time, Entertainment: A) Licensed the Mark to Sony Music, who sold records accruing in royalties. In just the three-year period of 2013 to 2016, sales of products bearing the Mark generated sufficient royalties to reduce the unrecouped balance[4] in the royalty account by approximately $1.2 million (P-Ex. 33), also *see* signed Sony contract filed post-hearing [DE 54]; B) Entered into a deal with a company called "Showpitch," who paid a substantial amount of money to begin to develop a TV show (which included a talent search to find a new "Menudo" band) (P-Ex. 20) and that Showpitch paid substantial money to Entertainment and to Oscar Llord (who acted as the broker of the deal); C) Licensed the Mark for the sale of merchandise with a company called Paid Celebrity Services[5]; and D) Entertainment entered into promotional campaigns with Telemundo, Univision, Honda and Yahoo. (footnote 5). Most relevantly, Entertainment tried to enter into a license with Defendants for a Menudo show in Mexico City.[6]

With respect to the second prong, Defendant must show that Entertainment/International had no intent to use the Mark. Carlos Pimentel and Oscar Llord each testified as to the efforts they undertook (on behalf of Entertainment) to continue to develop and exploit the Mark during the period of 2014 until 2016, when Big Bar Entertainment ultimately obtained complete ownership of the Mark through the lawsuit (P-Ex. 5). For this reason alone, Defendants cannot

---

[4] The unrecouped royalty balance was created by an "advance" payment by Sony. See Oscar Llord testimony.
[5] Oscar Llord testimony.
[6] Carlos Pimentel testimony.

show that Entertainment ever abandoned it's trademark rights, because it never stopped exploitation and continuously worked to exploit the Mark.

Likewise, Defendants cannot show that International abandoned it's trademark rights in the short period once it acquired the trademark in May, 2016 (P-Ex. 6). In the 16 months following International's acquisition of the Mark, it: A) spent $260,000 promoting and developing the Mark, B) entered into an agreement with Trading Connections for the development of a 40th anniversary tour, which would've netted International a minimum of $250,000 it negotiated for a TV show (P-Ex. 9), C) it also negotiated a TV Contract with Universal Cable (P-Ex. 21), and most relevantly, D) International developed a detailed business plan for presentation to sponsors and media partners (P-Ex. 17)[7]. Further, International registered the Mark with the USPTO under 2 classes, but it filed and was awarded registrations of the Mark in more than 20 countries (P-Ex. 19). Paul Tarnopol testified that International would have generated substantial money from the exploitation of the Mark, but for the tortious interference[8] by Defendant and her counsel in sending the cease-and-desist letters to it's partners and concert promoters of the 40th Anniversary tour. *See* Plaintiff's Ex. 25 and 27. Therefore, as evidenced herein, Defendants have no evidence either that International has abandoned the Mark or that either International or Entertainment ever intended to abandon the Mark.

### III. **Defendants Allegation that International's Chain of Title is Incomplete is False**

Both Oscar Llord and Defendant Braun testified that the rights to the registered Mark and common-law rights were created by Puerto Rican music producer, Edgardo Diaz, in 1977. He entered into contracts with all the Band members that contained Clause 22, which mandates that:

---

[7] Testimony of Paul Tarnopol and Oscar Llord.
[8] International will be amending the complaint to assert claims of tortious interference.

"The name Menudo for all legal and artistic purposes is the Property of the Company…"[9] *See* P-Ex. 1. Edgardo Diaz's registrations of the Mark were filed by his corporations, Padrosa America and Vanxy (*See* P- Ex. 13). Oscar Llord testified that he (and his wholly owned Company, Y2 Musica, Inc.) acquired the totality of the rights of Edgardo Diaz and his companies in 1999[9]. Oscar Llord also testified he transferred the totality of those rights to Entertainment in 2004[9]. The Mark was then registered in the Names of Y2 Musica and Entertainment. *See* P-Ex. 13. Entertainment was comprised of two partners, Big Bar Entertainment and Jerry Brenner[9]. Oscar Llord testified that no third-party challenged the rights of Entertainment and that Entertainment filed a number of trademark applications, which were awarded by the USPTO (P-Ex. 13)[9]. Those registrations are a matter of public record. After Jerry Brenner died in 2014, Carlos Pimentel testified (as did Oscar Llord) that he was appointed as the manager of Entertainment.[10]

As a result of litigation between and among the owners of Entertainment, Big Bar acquired all of the rights of Menudo Entertainment (P-Ex. 5)[9]. Oscar Llord and Paul Tarnopol each testified that on May 26, 2016, Big Bar Entertainment conveyed the totality of those rights, including the common-law rights to International (Plaintiff's Ex. 6)[10]. Thereafter, Carlos Pimentel, on behalf of the Entertainment, signed a subsequent assignment document transferring whatever remaining rights of Entertainment to International[10]. This document was referred to by Counsel as a "quitclaim deed." Subsequent to the hearing, the copy of this document was filed with this Court (*see* DE 55). There has been no evidence presented to rebut the 100% transfer of rights including the common-law rights starting with Edgardo Diaz and his Company and ending with International. Further, other than Defendant, no party has asserted or claimed any rights in the Mark[10].

---

[9] Llord testimony.
[10] Llord and Pimentel testimony.

IV.     **The Cancellation of Certain Marks Issued by the USPTO**

In an effort to show there has been abandonment, Defendants argued that because certain copyright trademark registrations issued to those parties in the chain of title (i.e. Zanaxy and Entertainment) have been marked as "cancelled" by the USPTO, that impacts the validity of International's title. This argument is of no consequence for 4 reasons: (*See* Chart Below).

| DEFENDANTS' EXHIBIT | MARK # | OWNER | DATE MARK CANCELLED | FOR |
|---|---|---|---|---|
| 3 | 1374718 | Padrosa | 1992 | Pocket Books |
| 4 | 0450894 | Entertainment | 2011 | CD's and Cassettes |
| 5 | 3175117 | Entertainment | 2013 | Website |
| 6 | 3428083 | Entertainment | 2014 | Live Performances |
| 7 | 3412154 | Entertainment | 2014 | Live Performances |
| 8 | 3769269 | Entertainment | 2016 | T-Shirts |

However, these are not all of the Trademark Registrations filed with the USPTO.

| PLAINTIFF'S EXHIBIT | MARK # | OWNER | DATE MARK CANCELLED | FOR |
|---|---|---|---|---|
| 2 | 7853677 | Entertainment | Live | Live Performances |
| 3 | 78536791 | Entertainment | Live | T-Shirts |
| 4 | 77027550 | Entertainment | Live | Live Performances |
| 7 | 4558767 | International | Live | Entertainment Services |
| 8 | 87656545 | International | Live | Audio and Video Recordings |
| 8 | 87193519 | International | Live | Live Performances |

1) Many of the cancellations occurred after the owner had transferred it's rights. Put simply, once a corporation (Like Entertainment) sells it's interest in a trademark, there is no reason for it to renew. Therefore, eventually every old trademark registration is canceled; 2) The trademarks 7863677, 78536791, and 77027550 in favor of Menudo Entertainment have not been canceled; 3) The USPTO has issued three new trademark registrations in favor of Plaintiff, one for Entertainment Services (4558767), one for live Audio and Video Recordings (87656545), and one conditionally for Live Performances (87193519) so long as it uses the mark by February 29, 2018; and 4) even if all the registrations were canceled, International has acquired common-law rights from everyone in the chain of title (Plaintiff's Exhibit 6).

## V.   International Did Not Unduly Delay in Seeking the Injunction

Defendants claim that International unduly delayed in filing for the injunction and therefore, it cannot overcome the hurdle of irreparable harm. In this regard, Defendants rely on the holding in *Wreal, LLC. v. Amazon.com*, 840 F.3d 1244, 1246 (11th Cir. 2016), (If applicable), which only creates a rebuttable presumption of no irreparable harm. The facts in *Wreal* are clearly distinguishable from the instant case. In *Wreal*, the plaintiff waited 5 months after filing their complaint to file for an injunction, with "no explanation or justification proffered to explain the delay," and the court focused on the fact that the plaintiff "conducted no discovery within this time." Here, International filed suit on April 28, 2017. In the Complaint International asked for an injunction, and filed a separate motion for preliminary injunction within 45 days. During this time, International filed a full set of discovery so that it could present evidence in support of this injunction and during this time, International learned the full extent of Defendants' infringing activities. In *Wreal*, the plaintiff (unlike here) did not seek an injunction in it's complaint and it waited more than 5 months to file for an injunction and over this period, the plaintiff "did nothing to move the case forward." This is clearly not the case here.

Defendants have argued here that because International acquired the Mark on May 26, 2016 and it filed suit roughly 11 months later on April 28, 2017, that this amount of time is longer than the delay in the *Wreal* case. However, unlike the plaintiff in *Wreal*, International has proffered a valid explanation for the lapse in time to file the suit, and certainly based upon the USPTO Ruling on the Live Performance Mark and timeliness of the 40th Anniversary Tour any presumption of "no irreparable harm" is rebutted. International's CEO, Paul Tarnopol explained what had occurred in this time: 1) International had to first complete it's Trademark registrations, including in 20 countries; 2) During this period, International attempted to negotiate a resolution

9

with the Defendants and their counsel; 3) International learned the extent of Defendants' harm to it's Mark; and 4) International needed to find a local lawyer (to file the suit) since it's counsel were in Texas and New York. For these reasons, Plaintiff's motion for injunction was made timely unlike the plaintiff in *Wreal*. Plaintiff could not find a case holding a delay of 45 days was enough to militate against a finding of irreparable harm. *See e.g. Berber v. Wells Fargo* 2017 US Dist. Lexis 5883 (S.D. Fla 2017) (Delay of 5 months). Further, courts in this circuit seem to hold that 2 months ("measured from the filing of the Complaint to the Injunction) is the line of demarcation. *See Pals v. Oviskeya Trading* 2017 US Dist. Lexis 18567 (S.D. Fla 2017).

### VI. Defendants Allegation that International has not been Assigned Common-Law Rights to the Trademark is Incorrect

For all common-law rights in the Mark, Defendant argued that plaintiff did not obtain the common-law rights, however the second trademark assignment dated May 26, 2016[11], which was attached as the second document as part of composite Exhibit 6, clearly demonstrates that the common-law rights were transferred in favor of International.

**WHEREFORE** for the reasons listed herein Plaintiff asks this Court to enter the Temporary Injunction, prohibiting the Defendants from use of the Mark "Menudo." Plaintiff stands ready to post bond as ordered by the Court.

Dated this 10th day of October, 2017.                Respectfully submitted,

**WOLFE LAW MIAMI, P.A.**
*Attorneys for Plaintiff*
175 SW 7th Street
Penthouse Suite 2410
Miami, FL 33130
Phone: 305-384-7370

By: __/ s/Richard C. Wolfe_____
     RICHARD C. WOLFE

---

[11] *See* DE 55

                                                         Florida Bar No.:  355607
                                                        rwolfe@wolfelawmiami.com

## **CERTIFICATE OF SERVICE**

      We hereby certify that on October 10, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.