UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-21559-Civ-TORRES

MENUDO INTERNATIONAL, LLC
a Florida LLC,

    Plaintiff,

v.

IN MIAMI PRODUCTION, LLC
a Florida LLC, MARIA CRISTINA
BRAUN, an individual, CHARLES
MASSO, an individual,

    Defendants.
_____/

## ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on Menudo International, LLC's ("Plaintiff") motion for a preliminary injunction [D.E. 16] against In Miami Production, LLC ("IMP") and Maria Cristina Braun ("Braun") (collectively "Defendants"). Defendants responded to Plaintiff's Motion on June 30, 2017 [D.E. 23] to which Plaintiff did not timely reply. On October 3, 2017, the Court held an evidentiary hearing and the parties filed supplemental briefs on October 10, 2017. [D.E. 56, 57-1]. Therefore, Plaintiff's motion is now ripe for disposition. After careful consideration of the motion, response, related filings, and the record, along with the testimony of witnesses, arguments of counsel, and evidence presented, Plaintiff's motion is **DENIED**.

1

## I. BACKGROUND

Plaintiff filed this action on April 26, 2017 for trademark infringement, unfair competition, and false description under §§ 31 and 43 of the Lanham Act, 15 U.S.C. §§ 1114(1) (trademark infringement) and §1125(a) (unfair competition and false description) for unfair business practices arising under Florida Statutes §§ 495.131, 495.151 and for injuries to Plaintiff's business reputation under the common law. [D.E. 1]. Plaintiff alleges that IMP[1] sells related merchandise in violation of Plaintiff's trademark and that Braun controls IMP's infringing activities. As such, Plaintiff seeks immediate relief in the form of a preliminary injunction to preserve the status quo and to prevent irreparable harm pending a final determination on the merits of Plaintiff's claims.

The allegedly infringing trademark relates to a group of male performers that were former members of the internationally renowned Puerto Rican boy band called Menudo. Producer Edgardo Diaz formed Menudo in the 1970s and the group released their first album in 1977. The group enjoyed widespread success throughout the 1980s when Menudo appeared on television shows, films, and merchandise. The band continued its success until the group released its final album in 1996.

In 2014, IMP began working with former members of Menudo when they expressed their desire to return to a music career. In August 2015, Braun, the

---

[1] IMP provides services for live musical groups, including artist management, development, booking, and promotions.

principal of IMP, met with Carlos Pimentel, who at the time allegedly claimed to be the owner of the Menudo trademarks. Both met and agreed to work on a licensing agreement so that IMP could use the Menudo trademark for upcoming concerts where thirteen of the thirty-seven former Menudo members would reunite and perform for their fans. While researching the history of the Menudo trademarks, it purportedly became clear to IMP and Braun that neither Mr. Pimentel nor Menudo Entertainment had any authority to control the use of the Menudo trademarks. As a result, IMP reached no agreement with Mr. Pimentel or Menudo Entertainment regarding the Menudo trademarks.

Since 2015, Plaintiff has marketed, distributed, and sold its good and services bearing the Menudo trademark. Yet, in that same year, IMP began to market and promote live performances by entertainers using the trademark without Plaintiff's permission. IMP has marketed and distributed t-shirts – and possibly other merchandise – containing a reference to the trademark to notify fans that Menudo has finally returned. More specifically, IMP produced, promoted, and sold over eighteen concert events using the Menudo trademark and invested significant sums of money in promoting and developing these events.

At some point in 2016, IMP applied to register the Menudo trademark with the Mexican trademark office. Shortly thereafter, Mr. Pimentel emailed Braun to express disapproval of the use of the Menudo name. On May 2, 2016, counsel for Big Bar Entertainment, an alleged predecessor of Plaintiff, sent a cease and desist letter.

In October 2016, Plaintiff filed an opposition to IMP's trademark application in Mexico. And on March 28, 2017, IMP filed a petition to cancel Plaintiff's registered trademark on the basis of fraud and Plaintiff's trademark counsel sent IMP another demand letter with a copy of the complaint on April 26, 2017.

On June 5, 2017, IMP filed its answer, including affirmative defenses and counterclaims. IMP claims that this lawsuit, and in particular Plaintiff's motion for preliminary injunction, has no merit because Plaintiff is not using the Menudo trademark in commerce whereas IMP has used the mark for over two years. Each of Plaintiff's attempts to register the trademarks has allegedly been cancelled or pending on a mere intent to use basis.

In sum, Plaintiff contends that the Menudo trademark has been in use since the 1970s and has been used continuously in commerce and by Plaintiff's predecessors since 1995. Because Defendants have purportedly attempted to profit from the success of the Menudo trademark, Plaintiff seeks a preliminary injunction to cease Defendants' activities and to set aside any consumer confusion that has resulted therefrom.

## II. ANALYSIS

### A. *Standard of Review*

To obtain a preliminary injunction, a movant must demonstrate the following: "(1) a substantial likelihood of success on the merits of the underlying case; (2) the movant will suffer irreparable harm in the absence of an injunction; (3) the harm

suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002); *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988).

In the Eleventh Circuit, "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1988); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("Because a preliminary injunction is 'an extraordinary and drastic remedy,' its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion"). However, "[i]f the movant is unable to establish a likelihood of success on the merits, a court need not consider the remaining conditions prerequisite to injunctive relief." *1-800 Contacts*, 299 F.3d at 1247 (citing *Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001)).

The goal of a preliminary injunction is to prevent irreparable harm and to "preserve the district court's power to render a meaningful decision after a trial on the merits." *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). "[T]he most compelling reason in favor of [granting a preliminary injunction] is the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act." *Id.* at 573; *see also All Care Nursing Serv., Inc.*

5

*v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) ("Preliminary injunctions are issued when drastic relief is necessary to preserve the *status quo*.").

When an injunction does more than preserve the status quo, however, an even stronger showing is required. *See, e.g., Miami Beach Fed. Sav. & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir. 1958) ("A mandatory injunction . . . especially at the preliminary stage of proceedings, should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party."); *United States v. Board of Educ. of Green County, Miss.*, 332 F.2d 40, 46 (5th Cir. 1965) ("[M]andatory injunctions are rarely issued and interlocutory mandatory injunctions are even more rarely issued, and neither except upon the clearest equitable grounds").

### B. *Failure to Establish Irreparable Harm*

Irreparable harm is the "'*sine qua non* of injunctive relief.'" *Siegel*, 234 F.3d at 1176 (quoting *Northeastern Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)). Even where movants establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper. *See Siegel*, 234 F.3d at 1176 (citing *Snook v. Trust Co. Of Georgia Bank of Savannah, N.A.,* 909 F.2d 480, 486 (11th Cir. 1990) (affirming denial of a preliminary injunction even though plaintiff established a likelihood of prevailing because plaintiff failed to meet the burden of proving irreparable injury); *City of*

6

*Jacksonville,* 896 F.2d at 1285 (reversing preliminary injunction based solely on plaintiff's failure to show irreparable injury); *Flowers Indus. v. FTC,* 849 F.2d 551, 552 (11th Cir. 1988) (same); *United States v. Lambert,* 695 F.2d 536, 540 (11th Cir. 1983) (affirming denial of preliminary injunction and stating that a plaintiff's "success in establishing a likelihood it will prevail on the merits does not obviate the necessity to show irreparable harm")).

Preliminary injunctive relief is also improper without a finding of likelihood of an "actual and imminent" irreparable injury. *Id.* To satisfy this requirement a movant must show a significant threat of irreparable harm, and not merely rely on remote or speculative injuries. *See, e.g. Ruffin v. Great Dane Trailers*, 969 F.2d 989, 995 (11th Cir. 1992) (holding that an injunction is inappropriate if the possibility of future harm arising from the behavior plaintiff seeks to enjoin is purely speculative); *Northeastern Fla. Chapter*, 896 F.2d at 1286 (conclusory allegation of irreparable harm in verified complaint and assertion of speculative economic injury at injunction hearing were inadequate to support an injunction order). "Indeed, the very idea of a preliminary injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1539 (11th Cir. 1989)); *see also Wireless Agents, L.L.C. v. T Mobile USA, Inc.,* 2006 WL 1540587, *3 (N.D. Tex. June 6, 2006) ("[D]elay in seeking

a remedy is an important factor bearing on the need for a preliminary injunction. Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief.").

We begin with the question of irreparable harm because the parties strongly dispute whether Plaintiff's motion can be denied for failing to timely file a motion for preliminary injunction. Defendants argue that Plaintiff knew about IMP and Braun's use of the Menudo trademarks starting in August 2015. For instance, IMP claims that it began a Menudo tour that garnered national press coverage and widespread use of the allegedly infringing mark. Defendants also note that on May 2, 2016, Plaintiff sent a cease and desist letter complaining about Defendants' activities and that Plaintiff was clearly aware that Defendants were allegedly committing trademark infringement.

Therefore, the thrust of Defendants' argument is that Plaintiff's motion for preliminary injunction – that was filed on June 16, 2017 – must fail because it was filed nearly two years after IMP first learned of the allegedly infringing use of the Menudo trademark back in August 2015. Defendants claim that Plaintiff knew about IMP's activities for two years yet did nothing to seek judicial relief. Plaintiff has allegedly shown no urgency or necessity for an injunction and Plaintiff's failure to act with any speed in moving for a preliminary injunction completely undermines any possible finding of irreparable harm. *See Wreal,* 840 F.3d at 1248 ("A delay in

8

seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm. A preliminary injunction requires showing "imminent" irreparable harm.") (citations omitted). Because Plaintiff cannot satisfy this element to obtain a preliminary injunction, Defendants conclude that Plaintiff's motion should be denied.

In response, Plaintiff contends that Defendants' arguments are misplaced because the Eleventh Circuit has allegedly held that the delay in filing a motion for preliminary injunction only creates a rebuttable presumption that a plaintiff has not suffered irreparable harm. Specifically, Plaintiff takes issue with Defendants' reliance on the Eleventh Circuit's decision in *Wreal*. *See Wreal,* 840 F.3d at 1244. Plaintiff suggests that the facts in *Wreal* are clearly distinguishable because the plaintiff in that case waited five months after filing their complaint to file a motion for a preliminary injunction and did so with no explanation or justification proffered to explain the delay. As such, Plaintiff concludes that the Eleventh Circuit focused primarily on the fact that the plaintiff conducted no discovery within that five month time frame and that the delay undermined any finding of irreparable harm.

In contrast to *Wreal*, Plaintiff argues that it filed this action on April 28, 2017 and quickly moved for a preliminary injunction within forty-five days. During this time, Plaintiff attests that it filed a full set of discovery as evidence in support of its motion for injunctive relief. Accordingly, Plaintiff concludes that its motion for injunctive relief was timely and that there is no case that supports Defendants'

argument that a delay of only forty-five days from the filing of a complaint to the filing of a motion for preliminary injunction is enough to undermine a finding of irreparable harm. *See, e.g.*, *Pals Grp., Inc. v. Quiskeya Trading Corp.*, 2017 WL 532299, at *6 (S.D. Fla. Feb. 9, 2017) ("[C]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.") (internal quotation and citation omitted).

After full consideration of the arguments presented, we agree with Defendants that Plaintiff waited far too long in filing its motion for preliminary injunction. In May 2016 (and perhaps earlier), Plaintiff became aware that Defendants were possibly infringing on its trademark. Yet, Plaintiff did not file its complaint until April 2017 and its motion for preliminary injunction followed in June 2017.

Contrary to Plaintiff's argument, *Wreal* is compelling given the facts presented. In *Wreal*, Amazon launched a service called "Fire TV" on April 2, 2014 and the plaintiff in that case filed a complaint against Amazon for trademark infringement two weeks later. Despite the speed in which plaintiff filed its complaint, plaintiff waited five months to file its motion for preliminary injunction. During that time, plaintiff conducted no discovery and only made routine case management filings. When plaintiff decided to finally file its motion for preliminary injunction in September 2014, the Eleventh Circuit found that the delay of even a few months – while not necessarily fatal – militates against a finding of irreparable harm. As such, the Eleventh Circuit affirmed the district court and held that the

plaintiff failed to "meet all four prerequisites to obtain a preliminary injunction," and that a "failure to meet even one doom[ed] its appeal." *See Wreal, LLC*, 840 F.3d at 1248 (citing *Siegel*, 234 F.3d at 1176).

The delay in this case is substantially longer than the time period in *Wreal*. In *Wreal*, the plaintiff promptly filed a lawsuit within two weeks of discovering that Amazon was possibly committing trademark infringement, yet decided to wait five more months to file a motion for preliminary injunction. Plaintiff suggests that the time period in *Wreal* merely demonstrates that the relevant time period should be construed from the time a complaint is filed until a party files a motion for preliminary injunction. Because Plaintiff filed its motion for preliminary injunction a mere forty-five days after the filing of the complaint, Plaintiff contends that Defendants' reliance on *Wreal* is erroneous and does nothing to undermine a finding of irreparable harm.

However, Plaintiff's argument is misplaced because it fails to account for any amount of time that occurred between the time of learning that Defendants were allegedly committing trademark infringement to the filing of the complaint. Stated differently, Plaintiff's position would allow a party – despite being aware of an unabashed infringer – to wait a lengthy amount of time before filing a complaint, since the only time period that mattered was the time between the complaint and the motion for preliminary injunction. This cannot be the law because "preliminary injunctions are generally granted under the theory that there is an urgent need for

11

speedy action to protect the plaintiffs' rights." *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir. 1985) ("Significant delay in applying for injunctive relief . . . tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement."). If the only time period that mattered was between the filing of a complaint and the motion for a preliminary injunction, any plaintiff could sit idly by and ignore potential infringers. That undermines the entire premise behind the necessity for irreparable harm.

A case that addresses the question presented is Judge Lenard's decision in *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1352 (S.D. Fla. 2002). In *Seiko*, the plaintiff admitted to knowing of defendants' trademark violations in the summer of 2000. However, the plaintiff waited until November 9, 2000 to send a cease-and-desist letter. The plaintiff then waited until May 2, 2001 – nearly a full year after plaintiff admitted to knowing of defendant's activities – to file a lawsuit. Judge Lenard found that "[e]ven getting giving Plaintiff credit for attempting to reach a settlement without litigation, there remain[ed] a three-month delay between [p]laintiff's last communication with [d]efendants and commencement of this suit." *Id.* at 1356. As such, the court held that "Plaintiff's dilatory prosecution of its rights . . . vitiate[d] the notion of irreparable harm," that it "undercut any sense of urgency, and, therefore, [p]laintiff . . . failed to demonstrate sufficient need for a preliminary injunction." *Id.* (citing *Comic Strip, Inc. v. Fox*

12

*Television Stations, Inc.*, 710 F. Supp. 976, 981 (S.D.N.Y. 1989)); *see also Lanvin, Inc. v. Colonia, Inc.,* 739 F. Supp. 182, 192 (S.D.N.Y. 1990) (denying preliminary injunction after seven-month delay); *Comic Strip, Inc. v. Fox Television Stations, Inc.*, 710 F. Supp. 976, 981 (S.D.N.Y. 1989) (finding that plaintiff first learned of an infringement in August of 1988 and that plaintiff did not commence a lawsuit until March 1989 constituted a dilatory prosecution of plaintiff's rights to obtain a preliminary injunction).

*Seiko* is persuasive because it demonstrates that if a party delays filing a complaint after a substantial amount of time, this "'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'" *Citibank,* 756 F.2d at 277 (quoting *Le Sportsac, Inc. v. Dockside Research, Inc.,* 478 F. Supp. 602, 609 (S.D.N.Y. 1979)).

As such, two time periods are relevant in determining whether a plaintiff acts promptly in seeking judicial relief: (1) a plaintiff cannot delay in filing a complaint after discovering a potential infringer, and (2) a plaintiff must move quickly in filing a motion for a preliminary injunction once a complaint has been filed. *See Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 771–72 (E.D. Mich. 2003) ("Although plaintiffs were aware of the alleged effects of SaveNow on their businesses as early as August, 2002, they delayed nine months before bringing a motion for injunctive relief. Plaintiffs' delay in seeking a preliminary injunction undermines their allegation of irreparable harm."). If *either* is unreasonably

delayed, a finding of irreparable harm is significantly weakened. Because Plaintiff waited far too long in filing a complaint after learning that Defendants were potentially infringing on the Menudo trademark, Plaintiff must present a compelling explanation for the delay.

To explain the delay, Plaintiff contends that it needed time to: (1) complete its trademark registrations in twenty countries, (2) negotiate a resolution with Defendants, (3) learn the extent of Defendants' harm, and (4) find a local lawyer to file the lawsuit because Plaintiff's attorneys reside in Texas and New York. All of these reasons, combined and in isolation, are unpersuasive. *See Berber v. Wells Fargo Bank, N.A.*, 2017 WL 2417960, at *4 (S.D. Fla. June 2, 2017) ("[I]t is undisputed by the parties that Plaintiff did not pursue an informal review of her termination despite being notified of the process in her termination letter. She waited more than 2 1/2 years following her termination to file suit and almost 6 months longer to file her Motion. None of these actions are consistent with the occurrence of irreparable harm requiring immediate and extraordinary court intervention."). For example, Plaintiff never specifically articulates why its lawyers needed one year to register its trademarks or why they needed such an extended period of time to learn the harm suffered by Defendants using the Menudo trademark. Plaintiff appears to suggest that both activities required a lot of attorney work, yet it is highly doubtful that Plaintiff's attorneys could not have filed a lawsuit in the interim.

Moreover, there is no showing here why a one year delay was required for Plaintiff to negotiate a resolution with Defendants. If Plaintiff was "concerned about a harm truly believed to be irreparable," Plaintiff would have acted "swiftly to protect itself," even in the midst of negotiating a potential settlement. *Berber*, 2017 WL 2417960, at *4. And if Plaintiff was truly being irreparably harmed and the lawyers they hired (who reside out of state) "could not quickly protect Plaintiff's rights, Plaintiff[] would have and should have hired new lawyers and filed their action after it became clear that Defendants would not cease and desist from further dissemination." *Badillo v. Playboy Entm't Grp., Inc.*, 2004 WL 1013372, at *2 (M.D. Fla. Apr. 16, 2004).

Therefore, Plaintiff's motion is **DENIED** because we cannot find that Plaintiff has suffered irreparable harm when "Plaintiff's delay is by itself sufficient grounds to deny its request for an injunction." *Pals Grp., Inc.*, 2017 WL 532299, at *6; *see also Vialle Grp., B.V. v. Green Wing Grp., Inc.*, 2016 WL 8678888, at *2 (S.D. Fla. Oct. 26, 2016) ("Courts in the Southern District and elsewhere have rejected injunctive relief based upon a party's delay in filing a motion seeking that extraordinary relief.") (citations omitted).

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's motion for preliminary injunction [D.E. 16] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 31st day of October, 2017.

<u>*/s/ Edwin G. Torres*</u>
EDWIN G. TORRES
United States Magistrate Judge