UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE: 1:17:cv-21559 KMW

MENUDO INTERNATIONAL, LLC
A Florida LLC

Plaintiff,

v.

IN MIAMI PRODUCTION, LLC.
A Florida LLC., Maria Cristina Bruan, an individual,
et. al.

Defendants.
_____

## IMP'S RESPONSE TO MENUDO INTERNATIONAL'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Defendant In Miami Production, LLC ("IMP") by and through undersigned counsel and pursuant to Rule 15 of the Federal Rules of Civil Procedure, moves for entry of an order denying the Plaintiff, Menudo International, LLC's ("Plaintiff" or "Menudo International") motion for leave to amend its complaint, and in support states follows:

**I.    Introduction**

Eight months after filing this lawsuit and four months following the deadline agreed upon by the parties to amend pleadings, Menudo International has filed an untimely motion to amend its complaint (doc. 67). Moreover, the motion fails to identify the nature of the amended pleading, nor does it explain why leave should be granted. It merely posits in summary fashion that none of the factors that this Court should consider weigh against a finding in favor of the plaintiff. Such a request – made deep into discovery just months before trial – should not be granted.

1

Indeed, the motion for leave to amend the complaint should be denied for at least three reasons. ***First***, the motion is untimely. ***Second***, any amendment at this point would unduly prejudice IMP. And ***third***, any amendment would be futile.

## II.     Legal Standard

Federal Rule of Civil Procedure 15(a) governs amendments to pleadings. A party may amend any pleading once as a matter of course before a responsive pleading has been filed or within twenty (20) days after serving the pleading if no responsive pleading is allowed. *See* Fed. R. Civ. P. 15(a)(1). In all other situations, the amending party must obtain written consent from the opposing party or leave of the court to amend the pleading. *See* Fed. R. Civ. P. 15(a)(2). The rule declares that leave to amend "shall be freely given when justice so requires." *Id*.

Furthermore, any amendments leading to a modification of the required pretrial scheduling order are subject to a "good cause" standard of scrutiny. Fed. R. Civ. P. 16(b)(4). That means that after the deadline for amending pleadings set forth in a Scheduling Order has passed, the party seeking the amendment must show good cause why leave to amend the complaint should be granted. *See e.g., Ray v. Equifax Info. Servs., LLC*, 327 Fed. Appx. 819, 2009 WL 977313, *1 (11th Cir. 2009) (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)). And a district court need not allow an amendment where allowing the amendment would cause undue prejudice to the opposing party. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

Even when the amendment is sought as a result of new information obtained during discovery, it is not an abuse of discretion to deny leave to amend if the moving party unduly delays pursuit of the amended pleading. *See, e.g., United States v. $172,760 in U.S. Currency*, 2007 U.S. Dist. LEXIS 25426, 2007 WL 1068138 (M.D. Ga. 2007). Additionally, a district court

may properly deny leave to amend when an amendment would be futile. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004).

### III.     Argument: The Motion for Leave Should Be Denied.

#### A.  The Request is Untimely.

On July 20, 2017, the parties filed a Joint Scheduling Report (doc. 30).  The Joint Scheduling Report proposed a July 30, 2017 deadline to amend pleadings.  *Id.*  Although this Court never formally entered that proposed order, the parties advised the Court at the November 3 preliminary injunction hearing that they were operating under the dates set forth in that report.  Thus, IMP's position is that the request is untimely because it has been made ***after*** the July 30, 2017 deadline to amend pleadings.

When a party seeks to amend a pleading after the applicable deadline has passed, the party is in effect asking the Court to modify a scheduling order. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998); *see also* FED. R. CIV. P. 16(b)(4) (scheduling order may be amended only for good cause and with the judge's consent). Thus, when a party files a motion for leave to amend a pleading after the relevant deadline has passed, the party must first establish good cause for the belated request. *Sosa*, 133 F.3d at 1418-19. To do otherwise would "render scheduling orders meaningless" and effectively "read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Id*. at 1419.

In order to demonstrate good cause that would support untimely amendment of a complaint, the plaintiff must demonstrate diligence. *Id*. at 1418; *see also Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008). This Court should evaluate whether a party acted with diligence by considering the following factors: (1) whether the plaintiff failed to ascertain facts prior to filing the complaint and to acquire information during

the discovery period; (2) whether the information supporting the proposed amendment was available to the plaintiff; and (3) whether, even after acquiring the information arguably supporting amendment, the plaintiff delayed in seeking said amendment. *See Kernal Records Oy v. Mosley*, 794 F. Supp. 2d 1355, 1368 (S.D. Fla. 2011); *Auto-Owners Ins. Co. v. Ace Elec. Serv., Inc.*, 648 F. Supp. 2d 1371, 1375 (M.D. Fla. 2009).

Because Menudo International has not attached any proposed amended complaint to its motion, neither IMP nor the Court can assess whether Menudo International has demonstrated diligence under the Eleventh Circuit case law cited above.  However, in the event Menudo International's attempt to amend relates to a proposed amended complaint at Doc. 64, IMP submits that each of the allegations set forth in Counts VI, VII, and VIII (counts that do not appear in the original complaint, *see* Doc. 1) took place in July of 2017 or earlier.  In other words, the plaintiff had several weeks to amend its complaint after learning of the new allegations and before the July 30 deadline, yet it did nothing until it filed this motion 5 months later, months *after* the preliminary injunction hearing and months *after* the deadline to amend pleadings.  Menudo International does not argue or explain why its conduct is diligent, probably because such conduct is not diligent as a matter of law.  Just like Menudo International was not diligent in seeking injunctive relief in this case, *see* Doc. 63, it was not diligent in seeking this amendment to the complaint.

**B. The Amendment Would Unduly Prejudice IMP.**

During the November hearing, this Court has indicated that it would be setting a trial date in the early part of 2018.  Substantial discovery has already taken place, and the parties expended substantial time and resources in preparing and participating in the November 2017 preliminary injunction hearing.  Allowing this amendment would require more (and duplicative) depositions,

4

more (and duplicative) written discovery, and more (and duplicative) litigation. Requiring IMP to defend such new claims on the eve of trial and near the end of the discovery period would be substantially prejudicial. As a result, the motion should be denied.

### C. The Amendment is Futile.

Even if this Court concludes that the request is timely and would not unduly prejudice IMP, Menudo International's motion should be denied because any amendment would be futile. As a reminder, the motion itself contains no proposed amended pleading. For this reason alone, the motion should be denied. However, this section focuses on the futility presented by the proposed Counts 6 through 8 in Doc. 63.

Florida's litigation privilege affords absolute immunity for all acts "related to and occurring within judicial proceedings." *Jackson*, 372 F.3d at 1274. This common law privilege initially developed to protect litigants and attorneys from liability for acts of defamation, but the Florida Supreme Court has extended the privilege to cover all acts related to and occurring within judicial proceedings. *See Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co*., 639 So. 2d 606, 607-08 (Fla. 1994). In *Levin*, the Florida Supreme Court explained the scope and rationale of the privilege:

> In balancing policy considerations, we find that absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior ... so [*11] long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding.

*Id.; see also Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007) ("litigation privilege applies across the board to actions in Florida, both to common - law causes of action, those initiated pursuant to a statute, or of some other origin").

The Eleventh Circuit has repeatedly found the Florida litigation privilege to bar a multitude of claims. In *Green Leaf Nursery v. E.I. DuPont De Nemours & Co*., 341 F.3d 1292, 1302-03 (11th Cir. 2003), the Eleventh Circuit applied the litigation privilege to affirm dismissal of claims of fraud, conspiracy, abuse of process, intentional infliction of emotional distress, tortious interference and deceptive and unfair trade practices based on defendant's destruction of evidence and fraudulent statements connected with previous litigation and settlements. Likewise, in *Jackson*, the Eleventh Circuit applied the litigation privilege as defined in *Levin* to affirm dismissal of claims of tortious interference and conspiracy to defraud based on statements and comments made during the course of settlement discussions with regard to an underlying litigation matter. 372 F.3d at 1274-76.

When the Florida litigation privilege extends to acts occurring outside of the courtroom, or, extra-judicial acts, the occurrence from which the claims arise must be integral or inextricably linked to the judicial process for the acts to be protected by the privilege. *Jackson*, 372 F.3d at 1275-76 (actions taken outside of court but during course of settlement negotiations were inextricably linked to the process of guiding ongoing litigation to a close and therefore protected by Florida litigation privilege).

Here, Menudo International alleges in Counts 6-8 that it entered into a contract with Trading Connections LLC ("Trading Connections") in June of 2017. Menudo International contends that it contracted with Trading Connections for the purpose of producing a 40th Anniversary Menudo Tour. Menudo International then alleges that IMP sent Trading Connections a cease and desist letter related to its plans to co-produce a tour with Menudo that uses the MENUDO trademarks at issue in this case. IMP has argued throughout this proceeding and others that it – not Menudo International – has the right to use the MENUDO trademark in

6

connection with musical tours and performances. Accordingly, IMP's decision to send a cease and desist letter to Trading Connections *during the pendency of this litigation* is privileged and nothing more than IMP's lawful attempt to enforce its valid trademark rights.

Both the United States Supreme Court and the Eleventh Circuit Court of Appeals have made clear that an entity like IMP is immune from suit for taking — or even threatening — legal action that has an anticompetitive effect under the *Noerr-Pennington* doctrine. *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965), and *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961). *See Valley Drug Co. v. Geneva Pharms., Inc.*, 344 F.3d 1294, 1302 n.14 (11th Cir. 2003). *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972), extended the Noerr-Pennington doctrine to attempts to petition administrative agencies and the judiciary. *See TEC Cogeneration, Inc. v. Fla. Power & Light Co.*, 76 F.3d 1560, 1571 n.28 (11th Cir. 1996). The doctrine, which, in part, grows out of a concern to protect the First Amendment right to petition, allows litigants to "use the channels and procedures of state and federal . . . courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-à-vis their competitors" without fear of falling afoul of federal or state anti-competition laws. *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1559 (11th Cir. 1992) (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972)).

The Eleventh Circuit's decision in *McGuire Oil Co. v. Mapco, Inc.*, is illustrative of the doctrine's application. There, a group of Alabama petroleum wholesalers threatened to sue — and ultimately did sue — an out-of-state petroleum producer for selling gasoline below cost, in alleged violation of an Alabama statute. *See id.* at 1554-55. The out-of-state producer

counterclaimed and alleged that the plaintiffs' litigation and pre-litigation conduct "constituted an anticompetitive price-fixing conspiracy" in violation of federal antitrust laws and Alabama's Unfair Trade Practices Act. *See id*. at 1557. The Eleventh Circuit disagreed, explaining that it would not construe Alabama's Unfair Trade Practices Act "to treat as unfair trade practices concerted activity that is constitutionally protected." *Id*. at 1562. In so doing, the panel reaffirmed that even litigation that is advanced with the purpose of stifling competition cannot serve as the basis of an antitrust or unfair trade practices lawsuit unless the suit is a sham. *See id*. at 1560 ("it is axiomatic that actions taken with an anticompetitive purpose or intent remain insulated from antitrust liability under the Noerr-Pennington doctrine").

As in *McGuire*, Menudo International seeks to hold IMP liable for using cease and desist letters intended to protect and enforce its trademark to advance an anti-competitive end. The Eleventh Circuit, however, has foreclosed that line of argument unless Menudo International can carry its heavy burden and demonstrate that IMP's suit is a sham.  But to do that, Menudo International needs to show that IMP's suit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Atico Int'l*, 2009 U.S. Dist. LEXIS 73540, 2009 WL 2589148, at *3 (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indust*., 508 U.S. 49, 57, 60, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993)).  Thus, so long as IMP asserted its trademark rights in this case "to win, or [] [its] goal [is] . . . a favorable decision from the [C]ourt[]," *McGuire*, 958 F.2d at 1560 (citation & footnote call number omitted), IMP is immune from having to defend against Menudo International's claims.

This Court cannot conclude (nor has Menudo International even argued) that IMP's assertions of its trademark rights in the MENUDO mark are a sham. To the contrary, it is readily apparent that IMP is advancing its legal position against Menudo International in this case, at

least in part, to protect its MENUDO trademark, not merely to interfere with Menudo International's business affairs. *Cf. McGuire*, 958 F.2d at 1559 (the "sham" exception to the Noerr-Pennington doctrine extends to "situations in which a publicity campaign, ostensibly directed toward influencing government action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor") (quoting *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961)).

Accordingly, the amendment would be futile, and Menudo International's motion should be denied.

WHEREFORE, IMP seeks entry of an order denying the motion for leave to amend, and any other relief this Court deems just and proper.

Respectfully Submitted,

/s/Vivek Jayaram
Vivek Jayaram, Esq.
Johanna Hyman, Esq.
Jayaram Law Group
125 S. Clark Street
17th Floor
Chicago, IL 60603
vivek@jayaramlaw.com
T: 646.325.9855
Counsel for Defendants
Admitted Pro Hac Vice

Joshua Ryan Alhalel
Alhalel Law
777 Brickell Avenue, Suite 600
Miami, FL 33131
305-563-9060
Email: josh@alhalel-law.com
Local Counsel