# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 17-21559-Civ-TORRES

MENUDO INTERNATIONAL, LLC,

    Plaintiff,

v.

IN MIAMI PRODUCTION, LLC
a Florida LLC, MARIA CRISTINA
BRAUN, an individual,

    Defendants.
_____/

## ORDER ON DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on In Miami Production, LLC's and Christina Braun's ("Defendants") motion to dismiss against Menudo International, LLC ("Plaintiff"). [D.E. 76]. Plaintiff responded on February 9, 2018 [D.E. 78] to which Defendants replied on February 16, 2018. [D.E. 79]. Therefore, Defendants' motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Defendants' motion is **GRANTED without prejudice**.

## *I.* *BACKGROUND*

Plaintiff filed this action on April 26, 2017 for trademark infringement, unfair competition, false description under §§ 31 and 43 of the Lanham Act, 15 U.S.C. §§ 1114(1) (trademark infringement) and §1125(a) (unfair competition and false description) for unfair business practices arising under Florida Statutes §§

1

495.131, 495.151 and for injuries to Plaintiff's business reputation under the common law. [D.E. 1]. Plaintiff alleges that IMP[1] sells related merchandise in violation of Plaintiff's trademark and that Braun controls IMP's infringing activities. As such, Plaintiff seeks immediate relief in the form of a preliminary injunction to preserve the status quo and to prevent irreparable harm pending a final determination on the merits of Plaintiff's claims.

The allegedly infringing trademark relates to a group of male performers that were former members of the internationally renowned Puerto Rican boy band called Menudo. Producer Edgardo Diaz formed Menudo in the 1970s and the group released their first album in 1977. The group enjoyed widespread success throughout the 1980s when Menudo appeared on television shows, films, and merchandise. The band continued its success until the group released its final album in 1996.

In 2014, IMP began working with former members of Menudo when they expressed their desire to return to a music career. In August 2015, Braun, the principal of IMP, met with Carlos Pimentel, who at the time allegedly claimed to be the owner of the Menudo trademarks. Both met and agreed to work on a licensing agreement so that IMP could use the Menudo trademark for upcoming concerts where thirteen of the thirty-seven former Menudo members would reunite and perform for their fans. While researching the history of the Menudo trademarks, it purportedly became clear to IMP and Braun that neither Mr. Pimentel nor Menudo

---

[1] IMP provides services for live musical groups, including artist management, development, booking, and promotions.

Entertainment had any authority to control the use of the Menudo trademarks. As a result, IMP reached no agreement with Mr. Pimentel or Menudo Entertainment regarding the Menudo trademarks.

Since 2015, Plaintiff has marketed, distributed, and sold its good and services bearing the Menudo trademark. Yet, in that same year, IMP began to market and promote live performances by entertainers using the trademark without Plaintiff's permission. IMP has marketed and distributed t-shirts – and possibly other merchandise – containing a reference to the trademark to notify fans that Menudo has finally returned. More specifically, IMP produced, promoted, and sold over eighteen concert events using the Menudo trademark and invested significant sums of money in promoting and developing these events.

At some point in 2016, IMP applied to register the Menudo trademark with the Mexican trademark office. Shortly thereafter, Mr. Pimentel emailed Braun to express disapproval of the use of the Menudo name. On May 2, 2016, counsel for Big Bar Entertainment, an alleged predecessor of Plaintiff, sent a cease and desist letter. In October 2016, Plaintiff filed an opposition to IMP's trademark application in Mexico. And on March 28, 2017, IMP filed a petition to cancel Plaintiff's registered trademark on the basis of fraud and Plaintiff's trademark counsel sent IMP another demand letter with a copy of the complaint on April 26, 2017.

On June 5, 2017, IMP filed its answer, including affirmative defenses and counterclaims. IMP claims that this lawsuit, and in particular Plaintiff's motion for preliminary injunction, has no merit because Plaintiff is not using the Menudo

3

trademark in commerce whereas IMP has used the mark for over two years. Each of Plaintiff's attempts to register the trademarks has allegedly been cancelled or pending on a mere intent to use basis. In sum, Plaintiff contends that the Menudo trademark has been in use since the 1970s and has been used continuously in commerce and by Plaintiff's predecessors since 1995.

## II. APPLICABLE LEGAL PRINCIPLES AND LAW

In ruling on Defendants' motions to dismiss, this Court takes the allegations in the complaint as true and construes the allegations "in the light most favorable to the plaintiffs." *Rivell v. Private Health Care Systems, Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citing *Hoffman–Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002)). "When considering a motion to dismiss, all facts set forth in [Plaintiff's] complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). A motion to dismiss under Rule 12(b)(6) "is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . ."

4

*Twombly*, 550 U.S. at 555 (internal citations and quotations omitted) (alteration in original). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Factual content gives a claim facial plausibility. *Id.* "[A] court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [the plaintiff]." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

## III. ANALYSIS

Defendants' motion seeks to dismiss three counts in Plaintiff's first amended complaint. The claims in question are: count 6 (common law injury to business reputation), count 7 (tortious interference with a contractual business relationship), and count 8 (tortious interference with advantageous business relationships). Defendants argue that Plaintiff (1) fails to allege that Defendants' conduct was unjustified, (2) fails to allege that Plaintiff suffered an injury to its business representation, and (3) fails to meet the *Noerr-Pennington Doctrine* or the requirements set forth under the First Amendment. We will discuss the parties' arguments in turn.

### A. *Tortious Interference of a Business Relationship*

Defendants first argue that counts 7 and 8 should be dismissed because the complaint fails to allege that IMP's conduct was unjustified, which is a required

5

element for a claim premised on tortious interference. Plaintiff explains, in response, that the allegations in paragraphs 11, 45-48, and 52-55 provide the necessary elements to state a claim for tortious interference and that Defendants' motion lacks any merit.

Under Florida law, "[t]he elements of tortious interference with a contract or business relationship are: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385–86 (Fla. 4th DCA 1999) (citing *Tamiami Trail Tours, Inc. v. Cotton,* 463 So. 2d 1126, 1127 (Fla. 1985); *Procacci v. Zacco,* 402 So. 2d 425, 426 (Fla. 4th DCA 1981); *Linafelt v. Bev, Inc.,* 662 So. 2d 986, 989 (Fla. 1st DCA 1995)).

With respect to the third element, the general rule is that "[f]or the interference to be unjustified, the interfering defendant *must be a third party*, a stranger to the business relationship." *Salit*, 742 So. 2d 381, 385–86 (emphasis added) (citing *Abruzzo v. Haller,* 603 So. 2d 1338 (Fla. 1st DCA 1992); *O.E. Smith's Sons, Inc. v. George,* 545 So. 2d 298, 299 (Fla. 1st DCA 1989); *West v. Troelstrup,* 367 So. 2d 253, 255 (Fla. 1st DCA 1979)). "A defendant is not a stranger to a business or contractual relationship if the defendant 'has any beneficial or economic interest in, or control over, that relationship.'" *Nimbus Techs., Inc. v.*

6

*SunnData Prod., Inc.*, 484 F.3d 1305, 1309 (11th Cir. 2007) (quoting *Tom's Foods, Inc. v. Carn,* 896 So. 2d 443, 454 (Ala. 2004)); *see also Waddell & Reed, Inc. v. United Investors Life Ins. Co.,* 875 So. 2d 1143, 1157 (Ala. 2003) ("One cannot be guilty of interference with a contract even if one is not a party to the contract so long as one is a participant in a business relationship arising from interwoven contractual arrangements that include the contract.").

Here, Defendants' arguments are well taken. To survive a motion to dismiss and allege a claim premised on tortious interference, a plaintiff must allege that "the defendant acted without justification." *Sec. Title Guarantee Corp. of Balt. v. McDill Columbus Corp.,* 543 So. 2d 852, 855 (Fla. 2d DCA 1989). Yet, nowhere in the first amended complaint does Plaintiff allege that Defendants were unjustified for their actions aside from a conclusory allegation presented in paragraph 49. And even that allegation is unclear because Plaintiff alleges that Defendants' actions were unjustified and then claims that they were warranted. [D.E. 64 at ¶ 49] ("Defendants' actions . . . are unjustified and warranted."). Ignoring that inconsistency, Plaintiff relies on paragraph 11 but those allegations are irrelevant because they relate solely to the chain of title of the trademark in question. Next, Plaintiff refers the Court (without any support) to paragraphs 45-48 and 52-55, but those allegations relate to a cease and desist letter that Defendants sent to Trading Connections. These allegations – without more – are insufficient to allege a tortious interference claim because Plaintiffs never allege whether Defendants are a third party or a stranger to the business relationship Plaintiffs had with Trading

7

Connections. And Plaintiffs failed to explain or clarify in their response how the interference from Defendants was unjustified.[2]

If Plaintiffs wish to amend counts 7 and 8, they need to make clear whether Defendants were a stranger to Plaintiff's business relationship. *See, e.g.*, *Boldstar Tech., LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1288–89 (S.D. Fla. 2007) ("Even were there a business relationship between plaintiffs and Home Depot, the court would nonetheless grant [defendant's] motion to dismiss plaintiffs' tortious interference claim because [defendant's] alleged conduct is not "unjustified" so as to be actionable."). This is essential because "the contractual interests that tortious interference is intended to protect *include* the interests of the third-party with respect to the contract." *Palm Beach Cty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1095 (Fla. 4th DCA 2009) (emphasis in original) (citing 2 Dan B. Dobbs, *The Law of Torts,* § 449 (2001); Restatement (Second) of Torts § 769 (1979)). In other words, a tortious interference claim cannot ordinarily survive if an interested third party is accused of "'interfering' with its own interests." *Palm Beach Cty. Health Care Dist.*, 13 So. 3d at 1095. Otherwise, the alleged conduct is not interference at all – it is merely freedom of contract. *See id.*

Alternatively, there are exceptions to the general rule that one cannot tortiously interfere with a contract to which it is a party. For example, if Defendants' business relationship was that of an agent, Defendants can be

---

[2] Defendants suggest Plaintiff cannot allege tortious interference in good faith because Defendants sought to protect their own trademark rights.

8

considered a thirty party to the contract if they acted outside the scope of their agency or not in Plaintiff's best interests. *See Sloan v. Sax,* 505 So. 2d 526, 528 (Fla. 3d DCA 1987) (holding that employee who was not acting in his employer's best interest when he encouraged his employer to terminate a contract satisfied the third party requirement); *see also Rudnick v. Sears, Roebuck & Co.,* 358 F. Supp. 2d 1201, 1206 (S.D. Fla. 2005) ("Florida courts have also clarified that the privilege to interference enjoyed by a party that is integral to the business relationship is not absolute. The privilege is divested when the defendant acts solely with ulterior purposes and the advice is not in the principal's best interest.").

Another option is to allege that – although Defendants were an interested third party – they acted with improper means. *See KMS Rest. Corp. v. Wendy's Int'l, Inc.,* 361 F.3d 1321, 1327 (11th Cir. 2004) ("Florida decisions also support KMS' contention that even where the defendant's motive is not purely malicious, a tortious interference claim may succeed if improper methods were used.") (citation omitted); *see also Metzler v. Bear Auto. Serv. Equip. Co.,* 19 F. Supp. 2d 1345, 1364 (S.D. Fla. 1998) ("As long as no improper means are employed, business activities taken to safeguard or promote one's own financial interests are not actionable.") (citing *Ethyl Corp. v. Balter,* 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980); *Perez v. Rivero,* 534 So. 2d 914, 916 (Fla. 3d DCA 1988)). While "the line between tortious interference and mere competitive effort is frequently difficult to ascertain," an allegation that Defendants acted with improper means, when accepted as true, is

9

enough to survive a motion to dismiss. *Hayes v. Irwin*, 541 F. Supp. 397, 430 (N.D. Ga. 1982).

As the complaint stands now, there are simply no allegations that explain the nature of the business relationship among Plaintiff, Trading Connections, and Defendant. This is insufficient to sustain a tortious interference claim, even at the motion dismiss stage, because "[w]here one does an act which is legal in itself, and violates no right of another person, it . . . does not give the latter a right of action against the former." *Chipley v. Atkinson,* 23 Fla. 206, 1 So. 934, 938 (Fla. 1887). Indeed, the Florida Supreme Court has stated that "in order to establish the tort of tortious interference with a business relationship, the plaintiff must prove a business relationship with identifiable customers." *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.,* 687 So. 2d 821 (Fla. 1996); *see also Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So. 2d 812, 815 (Fla. 1994) ("As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.") (citation omitted). Accordingly, without more factual support on the nature of the business relationship with Trading Connections, Plaintiff has failed to allege the third element of a claim premised on tortious interference and therefore

Defendants' motion to dismiss counts 7 and 8 must be **GRANTED without prejudice**.[3]

### B. *Injury to Business Reputation*

Defendants' second argument is that count 6 must fail because Plaintiff failed to allege an injury to its business reputation. Defendants argue that, under Florida law, an injury to business reputation requires some proof that the use of a trademark decreases the plaintiff's commercial value. Because Plaintiff omitted any factual support of an injury and merely speculates that harm will occur in the future, Defendants conclude that count 6 must be dismissed. *See* Fla. Stat. § 495.151.

In response, Plaintiff argues all the necessary elements of an injury to business reputation are present in paragraphs 9, 11, and 39 of the first amended complaint. Plaintiff also suggests that it need not present any proof that its commercial value has decreased as a result of the injury because there is no such requirement at the motion to dismiss stage. Accordingly, Plaintiff believes that its allegations meet all the requirements to plead an injury to its business reputation.

Section 495.151 – commonly referred to as the Florida Dilution Act – is the controlling statute for an injury to one's business reputation:

---

[3] We need not discuss the *Noerr-Pennington Doctrine* or the First Amendment because Defendants argued that they only barred the allegations presented in counts 7 and 8. Because counts 7 and 8 fail for an entirely separate reason, the disposition of these arguments is moot.

11

> The owner of a mark that is famous in this state shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction and to obtain such other relief against another person's commercial use of a mark or trade name if such use begins after the mark has become famous and is likely to cause dilution of the distinctive quality of the famous mark, as provided in this section.

Fla. Stat. § 495.151.

"A violation of the dilution statute may be based on either (1) a likelihood of injury to the business reputation or (2) a dilution of the distinctive quality of the trade name of the prior user." *Sakura Japanese Steakhouse Inc. v. Lin Yan, Inc.*, 827 So. 2d 1105, 1107 (Fla. 2d DCA 2002) (citing *Tortoise Island Homeowners Ass'n v. Tortoise Island Realty, Inc.,* 790 So. 2d 525 (Fla. 5th DCA 2001); *Great S. Bank v. First S. Bank,* 625 So. 2d 463, 470 (Fla. 1993)). "The elements of a violation of section 495.151, are '(1) the adoption and use of a trademark, (2) subsequent use by another of a similar mark, and (3) causing a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark . . . notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services." *Bluestar Entm't Int'l, Inc. v. Cooper*, 2008 WL 11333068, at \*4 (S.D. Fla. July 18, 2008) (citing E.*R. Squibb & Sons, Inc. v. Princeton Pharm., Inc.*, 1990 WL 272707, at \*10 (S.D. Fla. Sept. 4, 1990)).

Here, Plaintiff meets the first element for an injury to business reputation because the complaint alleges that Plaintiff owns and uses the trademark in question and that it markets, distributes, and sells various goods and services bearing the mark. However, Plaintiff fails to meet the second element because the

12

complaint alleges that Defendants used the same mark – not a similar mark. This allegation is misplaced because Fla. Stat. § 495.151 is limited to the use of *similar* marks. *See, e.g.*, *Bluestar Entm't Int'l, Inc.*, 2008 WL 11333068, at *4 ("Bluestar has not stated that Cooper has used a similar mark; it alleges that Cooper used the same mark. A claim of dilution under state law requires the 'use by another of a similar mark.' Therefore, the Court dismisses this count without prejudice."); *see also Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1024 (11th Cir. 1989) ("This provision permits any trademark owner, whether registered or unregistered, to prohibit either a non-competitor's or competitor's *use of a similar mark* if there is a likelihood of injury to business reputation or dilution of the mark's distinctive quality.") (emphasis added); *Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1267 (N.D. Fla. 2009) (same). Because Plaintiff's allegations involve Defendants' use of the same Menudo trademark, Plaintiffs cannot pursue a cause of action under Fla. Stat. § 495.151.

However, this does not mean that Plaintiff has no avenue for relief. As the Eleventh Circuit explained in *Tally-Ho*, Florida law provides a remedy when an infringer uses the same mark:

> At common law, a trademark was intended to differentiate between different sources of competing goods. Thus, an infringement action is based on the likelihood of consumer confusion between suppliers of competing goods in the same geographic locale. In contrast, a dilution action is based on the concept that a strong trademark has value beyond its ability to distinguish a good or service's source. A strong, distinctive trademark may become a symbol of consumer loyalty and goodwill rather than merely an indicator of supplier identity. A dilution action protects the owners of such strong, distinctive marks from the diminution of consumer goodwill by competitors or non-

13

competitors. Thus, dilution analysis is fundamentally different from infringement analysis; the former focuses on the dilution of a mark's distinctive quality while the latter focuses on the likelihood of consumer confusion. In addition, a dilution action eliminates the requirement of competition; an infringement action does not.

*Tally-Ho, Inc.*, 889 F.2d at 1024. This means that, if Defendants improperly used the same mark, trademark infringement – rather than an injury to business reputation – is the more appropriate avenue for relief. And count 5 of the complaint raises that precise claim based on infringement of the same mark. On the other hand, an allegation that Defendants are using a virtually identical – yet slightly different –mark would also suffice. *See, e.g.*, *Nguyen v. Biondo*, 2012 WL 12862799, at *10 (S.D. Fla. June 15, 2012) ("Defendants' use of the mark is likely to cause dilution because Defendants are using a virtually-identical trade name and service mark to promote the Wellington Tipsy."). Because Plaintiff's allegations fail to meet the second element under Fla. Stat. § 495.151, Defendants' motion to dismiss is **GRANTED without prejudice**.[4]

### IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendants' motion to dismiss counts 6-8 is **GRANTED without prejudice**. [D.E. 76]. Any amended complaint must be filed within fourteen (14) days from the date of this Order.

---

[4] Though this claim is dismissed without prejudice, we fail to see how Plaintiff can get around the limitation recognized in *Tally Ho*.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 2nd day of March, 2018.

>  /s/ *Edwin G. Torres*
>  EDWIN G. TORRES
>  United States Magistrate Judge