# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 17-21559-Civ-TORRES

MENUDO INTERNATIONAL, LLC,

    Plaintiff,

v.

IN MIAMI PRODUCTION, LLC
a Florida LLC, MARIA CRISTINA
BRAUN, an individual,

    Defendants.
_____/

## ORDER ON DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on In Miami Production, LLC's ("IMP") and Christina Braun's ("Ms. Braun") (collectively, "Defendants") motion to dismiss against Menudo International, LLC ("Plaintiff"). [D.E. 88]. Plaintiff responded on April 2, 2018 [D.E. 94] to which Defendants replied on April 9, 2018. [D.E. 99]. Therefore, Defendants' motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Defendants' motion is **GRANTED in part** and **DENIED in part**.

## *I.    BACKGROUND*

Plaintiff filed this action on April 26, 2017 for trademark infringement, unfair competition, false description under §§ 31 and 43 of the Lanham Act, 15 U.S.C. §§ 1114(1) (trademark infringement) and §1125(a) (unfair competition and false description) for unfair business practices arising under Florida Statutes §§

1

495.131, 495.151 and for injuries to Plaintiff's business reputation under the common law. [D.E. 1]. Plaintiff alleges that IMP[1] sells related merchandise in violation of Plaintiff's trademark and that Braun controls IMP's infringing activities. As such, Plaintiff seeks immediate relief in the form of a preliminary injunction to preserve the status quo and to prevent irreparable harm pending a final determination on the merits of Plaintiff's claims.

The allegedly infringing trademark relates to a group of male performers that were former members of the internationally renowned Puerto Rican boy band called Menudo. Producer Edgardo Diaz formed Menudo in the 1970s and the group released their first album in 1977. The group enjoyed widespread success throughout the 1980s when Menudo appeared on television shows, films, and merchandise. The band continued its success until the group released its final album in 1996.

In 2014, IMP began working with former members of Menudo when they expressed their desire to return to a music career. In August 2015, Braun, the principal of IMP, met with Carlos Pimentel, who at the time allegedly claimed to be the owner of the Menudo trademarks. Both met and agreed to work on a licensing agreement so that IMP could use the Menudo trademark for upcoming concerts where thirteen of the thirty-seven former Menudo members would reunite and perform for their fans. While researching the history of the Menudo trademarks, it purportedly became clear to IMP and Braun that neither Mr. Pimentel nor Menudo

---

[1] IMP provides services for live musical groups, including artist management, development, booking, and promotions.

Entertainment had any authority to control the use of the Menudo trademarks. As a result, IMP reached no agreement with Mr. Pimentel or Menudo Entertainment regarding the Menudo trademarks.

Since 2015, Plaintiff has marketed, distributed, and sold its good and services bearing the Menudo trademark. Yet, in that same year, IMP began to market and promote live performances by entertainers using the trademark without Plaintiff's permission. IMP has marketed and distributed t-shirts – and possibly other merchandise – containing a reference to the trademark to notify fans that Menudo has finally returned. More specifically, IMP produced, promoted, and sold over eighteen concert events using the Menudo trademark and invested significant sums of money in promoting and developing these events.

At some point in 2016, IMP applied to register the Menudo trademark with the Mexican trademark office. Shortly thereafter, Mr. Pimentel emailed Braun to express disapproval of the use of the Menudo name. On May 2, 2016, counsel for Big Bar Entertainment, an alleged predecessor of Plaintiff, sent a cease and desist letter. In October 2016, Plaintiff filed an opposition to IMP's trademark application in Mexico. And on March 28, 2017, IMP filed a petition to cancel Plaintiff's registered trademark on the basis of fraud and Plaintiff's trademark counsel sent IMP another demand letter with a copy of the complaint on April 26, 2017.

On June 5, 2017, IMP filed its answer, including affirmative defenses and counterclaims. IMP claims that this lawsuit, and in particular Plaintiff's motion for preliminary injunction, has no merit because Plaintiff is not using the Menudo

trademark in commerce whereas IMP has used the mark for over two years. Each of Plaintiff's attempts to register the trademarks has allegedly been cancelled or pending on a mere intent to use basis. In sum, Plaintiff contends that the Menudo trademark has been in use since the 1970s and has been used continuously in commerce and by Plaintiff's predecessors since 1995.

## II.   APPLICABLE LEGAL PRINCIPLES AND LAW

In ruling on Defendants' motions to dismiss, this Court takes the allegations in the complaint as true and construes the allegations "in the light most favorable to the plaintiffs." *Rivell v. Private Health Care Systems, Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citing *Hoffman–Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002)). "When considering a motion to dismiss, all facts set forth in [Plaintiff's] complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). A motion to dismiss under Rule 12(b)(6) "is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . ."

4

*Twombly*, 550 U.S. at 555 (internal citations and quotations omitted) (alteration in original). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Factual content gives a claim facial plausibility. *Id.* "[A] court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [the plaintiff]." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

### III. ANALYSIS

On March 2, 2018, we granted Defendants' first motion to dismiss without prejudice on the basis that Plaintiff failed to allege in its first amended complaint ("FAC") all the required elements in support of count 6 (common law injury to business reputation), count 7 (tortious interference with a contractual business relationship), and count 8 (tortious interference with advantageous business relationships). [D.E. 80]. On March 6, 2018, Plaintiff filed a second amended complaint ("SAC") [D.E. 81] and Defendants filed this second motion to dismiss on March 20, 2018. [D.E. 88]. Defendants argue that Plaintiff (1) fails to allege that Defendants' conduct was unjustified and (2) fails to allege that Plaintiff suffered an injury to its business representation. We will consider the parties' arguments in turn.

5

### A. *Tortious Interference of a Business Relationship*

Defendants' first argument is that counts 7 and 8 must be dismissed because the SAC fails to allege that Defendants' conduct was unjustified, which is a required element for a claim premised on tortious interference. Defendants acknowledge that Plaintiff included two additional allegations[2] in the SAC as an attempt to remedy the deficiencies in the FAC. But, Defendants argue that counts 7 and 8 must be dismissed again because the allegations are far too conclusory and do not comply with the pleading requirements set forth under Rule 8. To state a claim for tortious interference, Defendants suggest that Plaintiff must allege sufficient facts that Defendants' actions were unjustified. *See, e.g.*, *Alticor Inc. v. UMG Recordings, Inc.*, 2015 WL 736346, at *2 (M.D. Fla. Feb. 20, 2015) (citing *Mattocks v. Black Entm't Television LLC,* 2014 WL 4101594, at *5–6 (S.D. Fla. Aug. 20, 2014) (*Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 742 So. 2d 381, 386 (Fla. 4th DCA 1999)). Because Plaintiff has only presented conclusory allegations in support of its claim that Defendants' actions were unjustified, Defendants argue that counts 7 and 8 must be dismissed.

Plaintiff takes issue with Defendants' argument because Plaintiff explicitly stated in the SAC that Defendants' actions were unjustified and that Defendants were a stranger to the business relationship with Trading Connections. As such,

---

[2] Plaintiff's new allegations are that "Defendants are strangers to the business relationship between Trading Connections and the Plaintiff," and (2) that Defendants' conduct was "unwarranted" and "without a legal basis." [D.E. 81].

Plaintiff believes that it has alleged all the elements of a tortious interference claim and that Defendants' motion must be denied.

Under Florida law, "[t]he elements of tortious interference with a contract or business relationship are: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385–86 (Fla. 4th DCA 1999) (citing *Tamiami Trail Tours, Inc. v. Cotton,* 463 So. 2d 1126, 1127 (Fla. 1985); *Procacci v. Zacco,* 402 So. 2d 425, 426 (Fla. 4th DCA 1981); *Linafelt v. Bev, Inc.,* 662 So. 2d 986, 989 (Fla. 1st DCA 1995)).

With respect to the third element, the general rule is that "[f]or the interference to be unjustified, the interfering defendant *must be a third party*, a stranger to the business relationship." *Salit*, 742 So. 2d 381, 385–86 (emphasis added) (citing *Abruzzo v. Haller,* 603 So. 2d 1338 (Fla. 1st DCA 1992); *O.E. Smith's Sons, Inc. v. George,* 545 So. 2d 298, 299 (Fla. 1st DCA 1989); *West v. Troelstrup,* 367 So. 2d 253, 255 (Fla. 1st DCA 1979)). "A defendant is not a stranger to a business or contractual relationship if the defendant 'has any beneficial or economic interest in, or control over, that relationship.'" *Nimbus Techs., Inc. v. SunnData Prod., Inc.*, 484 F.3d 1305, 1309 (11th Cir. 2007) (quoting *Tom's Foods, Inc. v. Carn,* 896 So. 2d 443, 454 (Ala. 2004)); *see also Waddell & Reed, Inc. v.*

7

*United Investors Life Ins. Co.,* 875 So. 2d 1143, 1157 (Ala. 2003) ("One cannot be guilty of interference with a contract even if one is not a party to the contract so long as one is a participant in a business relationship arising from interwoven contractual arrangements that include the contract."). These allegations are essential because "the contractual interests that tortious interference is intended to protect *include* the interests of the third-party with respect to the contract." *Palm Beach Cty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1095 (Fla. 4th DCA 2009) (emphasis in original) (citing 2 Dan B. Dobbs, *The Law of Torts,* § 449 (2001); Restatement (Second) of Torts § 769 (1979)). In other words, a tortious interference claim cannot ordinarily survive if an interested third party is accused of "'interfering' with its own interests." *Palm Beach Cty. Health Care Dist.*, 13 So. 3d at 1095. Otherwise, the alleged conduct is not interference at all – it is merely freedom of contract. *See id*.

Here, Plaintiff alleges in paragraphs 49 and 56 of the SAC that "Defendants' actions . . . are unjustified, unwarranted, and without legal basis." [D.E. 81 at ¶¶ 49, 56].[3] These allegations – when joined with the rest of the allegations in SAC – are enough to state a claim for tortious interference because they suggest that Defendants were engaging in improper means when they contacted Trading Connections in July 2017. For example, Plaintiff alleges that Defendants *falsely* claimed to Trading Connections that Plaintiff did not own the Menudo trademark.

---

[3]   Plaintiff also clarifies for the first time in the SAC that "Defendants are strangers to the business relationship between Plaintiff and Trading Connections." [D.E. 81 at ¶¶ 43, 52].

8

Plaintiff then alleges that on July 11, 2017, Defendants communicated with Trading Connections to claim that Plaintiff did not own exclusive rights to the Menudo trademark and that the parties were violating Defendants' rights.[4] Therefore, when the SAC is read in conjunction with Plaintiff's additional allegations, all the elements of a tortious interference claim are present because (1) Defendants were "strangers to the business relationship with Trading Connections", (2) Defendants "falsely claim[ed] that Plaintiff did not own the trademark to Menudo," (3) Defendants "intended to induce a breach or disruption" of Plaintiffs' contract, and (4) Defendants' actions were "unjustified, unwarranted, and without legal basis." [D.E. 81 at ¶¶ 43, 46, 47].

We note that – while Plaintiff could have been clearer and included many more allegations in support of its tortious interference claim – the SAC provides just enough plausible inferences that Defendants were engaging in improper means in their communications with Trading Connections. And while Plaintiff did not explicitly claim that Defendants were engaging in improper means, it is clear that the gravamen of Plaintiff's allegations is that Defendants made false statements with a malicious motive to induce a breach of contract.[5] Plaintiff need not allege anything more at the pleading stage to survive a motion to dismiss. *See KMS Rest.*

---

[4] Plaintiff also claims that Defendants demanded that Trading Connections cease-and-desist all activities.

[5] Improper means includes physical violence, *misrepresentations*, intimidation, conspiratorial conduct, illegal conduct and threats of illegal conduct. *See G.M. Brod & Co. v. U.S. Home Corp.,* 759 F.2d 1526 (11th Cir. 1985); *Morsani v. Major League Baseball,* 663 So.2d 653 (Fla. 2d DCA 1995); Fla. Std. Jury Instructions in Civil Cases § 408.6 (2010).

9

*Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1327 (11th Cir. 2004) ("[A] tortious interference claim may succeed if improper methods were used.") (citation omitted); *see also Metzler v. Bear Auto. Serv. Equip. Co.*, 19 F. Supp. 2d 1345, 1364 (S.D. Fla. 1998) ("As long as no improper means are employed, business activities taken to safeguard or promote one's own financial interests are not actionable.") (citing *Ethyl Corp. v. Balter,* 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980); *Perez v. Rivero,* 534 So. 2d 914, 916 (Fla. 3d DCA 1988)). Therefore, we conclude that Plaintiff has alleged enough factual allegations that Defendants' actions were unjustified and therefore Defendants' motion to dismiss counts 7 and 8 is **DENIED**.

### B. *Injury to Business Reputation*

Defendants' second argument is that count 6 must be dismissed because Plaintiff failed to allege an injury to its business reputation. First, Defendants argue that, under Florida law, an injury to business reputation requires some proof that the use of a trademark decreases the plaintiff's commercial value. Second, Defendants contend that count 6 pleads no facts supporting a conclusion that an injury has occurred in this case and that Plaintiff improperly speculates that harm may occur in the future. *See* Fla. Stat. § 495.151. And third, Defendants claim that Plaintiff failed to amend count 6 after the Court's prior Order – meaning the allegations should be dismissed for the same reasons. Because count 6 in the SAC is completely identical to the FAC and therefore suffers from the same deficiencies previously identified, Defendants conclude that it must be dismissed.

In response, Plaintiff suggests that Defendants arguments are misplaced because the SAC – specifically in paragraph 39 – alleges that Plaintiff's commercial value has decreased as a result of Defendants' misconduct. Plaintiff also argues that the cases that Defendants rely upon are distinguishable because they consider the sufficiency of the evidence presented at trial – not the adequacy of the pleadings. Because this case is only at the motion to dismiss stage and the Court must accept as true the allegations presented in the SAC, Plaintiff concludes that Defendants' motion to dismiss count 6 must be denied.

Section 495.151 – commonly referred to as the Florida Dilution Act – is the controlling statute for an injury to one's business reputation:

> The owner of a mark that is famous in this state shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction and to obtain such other relief against another person's commercial use of a mark or trade name if such use begins after the mark has become famous and is likely to cause dilution of the distinctive quality of the famous mark, as provided in this section.

Fla. Stat. § 495.151.

"A violation of the dilution statute may be based on either (1) a likelihood of injury to the business reputation or (2) a dilution of the distinctive quality of the trade name of the prior user." *Sakura Japanese Steakhouse Inc. v. Lin Yan, Inc.*, 827 So. 2d 1105, 1107 (Fla. 2d DCA 2002) (citing *Tortoise Island Homeowners Ass'n v. Tortoise Island Realty, Inc.,* 790 So. 2d 525 (Fla. 5th DCA 2001); *Great S. Bank v. First S. Bank,* 625 So. 2d 463, 470 (Fla. 1993)). "The elements of a violation of section 495.151, are '(1) the adoption and use of a trademark, (2) subsequent use by

another of a similar mark, and (3) causing a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark . . . notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services." *Bluestar Entm't Int'l, Inc. v. Cooper*, 2008 WL 11333068, at *4 (S.D. Fla. July 18, 2008) (citing E.*R. Squibb & Sons, Inc. v. Princeton Pharm., Inc.*, 1990 WL 272707, at *10 (S.D. Fla. Sept. 4, 1990)).

Here, Plaintiff meets the first element for an injury to business reputation because the complaint alleges that Plaintiff owns and uses the trademark in question and that it markets, distributes, and sells various goods and services bearing the mark. However, Plaintiff fails again to meet the second element because – similar to the FAC – the SAC continues to allege that Defendants used the same mark, not a similar mark. This allegation is improper because Fla. Stat. § 495.151 is limited to the use of *similar* marks. *See, e.g.*, *Bluestar Entm't Int'l, Inc.*, 2008 WL 11333068, at *4 ("Bluestar has not stated that Cooper has used a similar mark; it alleges that Cooper used the same mark. A claim of dilution under state law requires the 'use by another of a similar mark.' Therefore, the Court dismisses this count without prejudice."); *see also Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1024 (11th Cir. 1989) ("This provision permits any trademark owner, whether registered or unregistered, to prohibit either a non-competitor's or competitor's *use of a similar mark* if there is a likelihood of injury to business reputation or dilution of the mark's distinctive quality.") (emphasis added); *Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1267 (N.D. Fla. 2009) (same). Because

Plaintiff's allegations involve Defendants' use of the same Menudo trademark, Plaintiffs cannot pursue a cause of action under Fla. Stat. § 495.151.

Plaintiff's arguments in support of count 6 are therefore misplaced because Plaintiff failed to amend any portion of its allegations when compared to its prior complaint. In other words, the allegations in count 6 are identical in every respect between the FAC and the SAC. And although Plaintiff argues that Defendants' cases are inapposite, Plaintiff noticeably avoids any discussion on how it can allege an injury to business reputation when Fla. Stat. § 495.151 is limited to the use of similar marks. As the Eleventh Circuit explained in *Tally-Ho*, Florida law provides a remedy when an infringer uses the same mark, but that remedy does not include a business to injury reputation:

> At common law, a trademark was intended to differentiate between different sources of competing goods. Thus, an infringement action is based on the likelihood of consumer confusion between suppliers of competing goods in the same geographic locale. In contrast, a dilution action is based on the concept that a strong trademark has value beyond its ability to distinguish a good or service's source. A strong, distinctive trademark may become a symbol of consumer loyalty and goodwill rather than merely an indicator of supplier identity. A dilution action protects the owners of such strong, distinctive marks from the diminution of consumer goodwill by competitors or non-competitors. Thus, dilution analysis is fundamentally different from infringement analysis; the former focuses on the dilution of a mark's distinctive quality while the latter focuses on the likelihood of consumer confusion. In addition, a dilution action eliminates the requirement of competition; an infringement action does not.

*Tally-Ho, Inc.*, 889 F.2d at 1024.

This means that, if Defendants improperly used the same mark, trademark infringement – rather than an injury to business reputation – is the more

appropriate avenue for relief.[6] And count 5 of the complaint raises that precise claim based on infringement of the same mark. Because Plaintiff's allegations fail to meet the second element under Fla. Stat. § 495.151 and Plaintiff failed to amend any portion of count 6 after being granted leave to do so, Defendants' motion to dismiss is **GRANTED with prejudice**.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that:

A. Defendants' motion to dismiss counts 7 and 8 is **DENIED**.

B. Defendants' motion to dismiss count 6 is **GRANTED with prejudice**.

C. Defendants' motion to strike the amendments in count 4 is **DENIED**.[7]

---

[6] Allegations that a defendant used virtually identical – yet slightly different – marks would have been sufficient to state a claim for relief. *See, e.g.*, *Nguyen v. Biondo*, 2012 WL 12862799, at *10 (S.D. Fla. June 15, 2012) ("Defendants' use of the mark is likely to cause dilution because Defendants are using a virtually-identical trade name and service mark to promote the Wellington Tipsy.").

[7] Defendants argued in a footnote that Plaintiff made amendments to count 4 without leave of Court and that the revised allegations should be stricken under Rule 12(f). But, striking a portion of a pleading is considered to be a "drastic remedy to be resorted to only when required for the purposes of justice." *Exhibit Icons, LLC v. XP Cos.,* 609 F. Supp. 2d 1282, 1300 (S.D. Fla. 2009). Given that Defendants have failed to articulate a substantive reason on why the amendments should be stricken coupled with the fact that we granted Plaintiff leave to file an amended complaint, Defendants' motion to strike the revised allegations in count 4 is **DENIED**. *See Microsoft Corp. v. Jesse's Computers & Repair, Inc.,* 211 F.R.D. 681, 683 (M.D. Fla. 2002) ("District courts have broad discretion in disposing of motions to strike under Fed. R. Civ. P. 12(f).") (citation omitted).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of April, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge