UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE: 17-cv-21559

MENUDO INTERNATIONAL, LLC
A Florida LLC

**Plaintiff,**

v.

IN MIAMI PRODUCTION, LLC.
A Florida LLC,

**Defendant/Third-Party Plaintiff,**

v.

Didier Hernandez, an individual, and
TRADING CONNECTIONS, LLC,
A Florida LLC,

**Third-Party Defendants**
_____/

### IMP'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION AGAINST DIDIER HERNANDEZ AND TRADING CONNECTIONS, LLC[1]

NOW COMES Third-Party Plaintiff, In Miami Productions, LLC ("IMP") and for its reply in support of its Motion for Preliminary Injunction against Third Party Defendants Didier Hernandez ("Mr. Hernandez") and Trading Connections, LLC ("Trading Connections") (collectively the " Third Party Defendants") [Doc. No. 90] to Plaintiff Menudo International, LLC's ("Menudo International" or "MI") Response [Doc. No. 98] hereby states as follows:

**I. INTRODUCTION**

MI has abandoned the Menudo trademark.  IMP, through continuous use for years, is

---

[1] IMP filed a Motion for Preliminary Injunction directed at Third Party Defendants Didier Hernandez and Trading Connections, LLC  [Doc. No. 90]. Plaintiff Menudo International filed a Response on the basis that it "would be impacted by an injunction." [Doc. No. 98]. Accordingly, IMP directs this Reply at Menudo International's Response only.

1

the senior user of that mark. The Third Party Defendants and MI have interfered in MI's longstanding agreements with its musicians and must be enjoined until trial from using the mark for live performances . This injunction is more pertinent than ever because MI and the Third Party Defendants are actively interfering with IMP's ability to continue its 40th Anniversary Menudo Reunion shows. Indeed, after nine years of non-use, MI authorized the Third Party Defendants to produce and perform an infringing show using the Menudo marks during the very pendency of this motion.

Accordingly, IMP is seeking entry of a preliminary injunction prohibiting the Third Party Defendants (and their conspirators, Menudo International) from furtherance of wrongful use of IMP's MENUDO trademarks and poaching of its band members until this matter is heard on the merits on or before the previously set trial date of August 6, 2018.

## II.   ARGUMENT

### A.   IMP Is Entitled to Injunctive Relief

In this Circuit, in order to obtain a preliminary injunction, a party must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *See also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction). Despite MI's arguments to the contrary, IMP has successfully established all of the requisite elements in favor of granting its motion for preliminary injunction against the Third Party Defendants.

### 1.   IMP Has Established Irreparable Harm

IMP has timely filed its Motion for Preliminary Injunction by filing its papers instantaneously after learning that the Plaintiff and/or Trading Connections and/or Didier Hernandez were actively planning on putting on a show or tour using the Menudo trademarks. Doc. No. 90. IMP's suspicions were apparently well-founded since it recently learned that these parties produced a private show in Miami using the Menudo trademarks on April 8, 2018. This was the Plaintiff's first use of the trademark since 2009. *See e.g.* Doc. No. 90, Exhibit 2 at 62:14-24.

While MI has argued that IMP has not acted with the requisite speed or urgency in moving for a preliminary injunction, this argument simply misapplies the law in the Eleventh Circuit. Preliminary injunctive relief requires a finding of likelihood of an actual and imminent irreparable injury. *Siegel v. LePore*, 234 F.3d 1163, 1176, 14 Fla. L. Weekly Fed. C 219 (11th Cir. 2000). To satisfy this requirement, a movant must show a significant threat of irreparable harm, and **not merely rely on remote or speculative injuries**. *See, e.g. Ruffin v. Great Dane Trailers*, 969 F.2d 989, 995 (11th Cir. 1992) (emphasis added)(finding that an injunction is inappropriate if the possibility of future harm arising from the behavior plaintiff seeks to enjoin is purely speculative); *Northeastern Fla. Chapter of Ass'n of Gen. Contractors v. City Jacksonville*, 896 F.2d 1283, 1286 (11th Circ. 1990)(conclusory allegation of irreparable harm in verified complaint and assertion of speculative economic injury at injunction hearing were inadequate to support an injunction order).[2]

---

[2] MI's reliance on *Wreal, LLC v. Amazon.com* 840 F.3d 1244 is misplaced. IMP reminds this Court that MI has previously taken the position in this case that "that the time period in *Wreal* merely demonstrates that the relevant time period should be construed from the time a complaint is filed until a party files a motion for preliminary injunction." *See* MI's Post Hearing Memorandum, Doc. No. 56 at pp 9-10. MI should be estopped from taking a different position here. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)(holding that courts have uniformly recognized that the purpose of the estoppel doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment and because judicial estoppel is designed to prevent improper use of judicial machinery, it is an equitable doctrine invoked by a court at its discretion). *See also Intellivision v. Microsoft Corp.*, 484 Fed. Appx. 616 (2d Cir. 2012)(party is judicially estopped

3

MI argues in its response that the testimony provided by various witnesses under oath at the October 3, 2017 preliminary injunction hearing was the "triggering event" for which IMP learned of the Third Party Defendant's infringing activity. As set forth below, however, this testimony only demonstrated, at best, "purely speculative future harm" under Eleventh Circuit law. At the October 3, 2017 hearing, Menudo International's witnesses Oscar Llord and Paul Tarnopol testified as to an agreement between MI and the Third Party Defendants for the licensing of certain Menudo trademarks to plan a 40th Anniversary Menudo tour. Mr. Llord and Mr. Tarnopol's testimony, however, clearly demonstrates that they had no real plans to plan any actual tours, and further testified that the contract was impeded, was not valid, that their plans to put on any tour had been destroyed, and that the contract had "become toilet paper." *See* Doc. No. 90, Exhibit 2 at 55:4-20; 128:1-4; 130:20-22; 131:1-5;138:3-7. Accordingly, at this October 3, 2017 hearing, any infringing activity seemed unlikely, and *at best* remote, and purely speculative since the Plaintiff had no actual plans to use the trademark in commerce (an obvious predicate act to infringement)[3]. Moreover, the Plaintiff's recent filing of an amended complaint for tortious interference affirmatively alleges that the agreement discussed at the hearing "ceased" before the hearing even took place. In other words, testimony surrounding the existence of the contract that was "toilet paper" and "ceased" to exist cannot and should not be considered the moment which would have required IMP to file a preliminary injunction under these circumstances. Testimony given by representatives from MI regarding the invalidity and

---

from taking an inconsistent position in the same case). Furthermore, to characterize the time in which IMP sought to file its Preliminary Injunction against the Third Party Defendants as similar to MI's extreme and inexplicable delay is a mischaracterization of the record.

[3] MI further conceded to the fact that Trading Connections was not *using* the Menudo trademark to put on an anniversary show in its Second Amended Complaint. *See* Doc. No. 81 at ¶ 48("…Trading Connections ceased doing business with Plaintiff, refused to pay the guarantee set forth in the Contract and ceased all further activities in connection with Plaintiffs…"). Before any imminent infringing activity had occurred, IMP had no legal basis to bring an injunction, and absent such activity, IMP could not have sought any real recourse because there was nothing to enjoin. That is the case no longer.

inability to perform under a contract lacks the creation of any risk of significant threat of irreparable harm under Eleventh Circuit law. Absent any such *use* of the Menudo mark, IMP had no basis to seek an injunction. *See Learning Experience Systems, LLC v. Foxborough Child Care Care, LLC*, No. 10-80561-Civ, 2010 U.S. Dist. LEXIS 93867, at *21 (S.D. Fla. Aug. 19, 2010)(Preliminary injunction denied because plaintiff could not establish likelihood of success on the merits as to trademark infringement when defendant had not actually used the mark. Only proving negligible use was not enough for a preliminary injunction because there was nothing for the Court to enjoin).

The actual event triggering the need to file a motion for preliminary injunction was the planning and an execution of a copycat Menudo Reunion show. IMP did not learn of this infringing activity until February 21, 2018, when a promoter informed IMP that Mr. Hernandez was actively promoting a copycat 40th Anniversary Reunion Tour. (*See* Doc. No. 90, Exhibit 1, Declaration of Cristina Bruan at ¶ 33). IMP filed its Preliminary Injunction expeditiously on March 23, 2018 (Doc. No. 90).[4] Any action for injunctive relief before this time would have been open to a claim of speculation. Based on the fact that promotional materials bearing identical marks to IMP's MENUDO Mark circulated in late February, coupled with the fact that a show itself was imminent (and occurred on April 8), IMP had no choice but to file this Preliminary Injunction; it did so imminently and absent any delay. Accordingly, IMP has not delayed in bringing its Motion for Preliminary Injunction against the Third Party Defendants, and has established the requisite urgency required to grant such relief.

2. **IMP Has Established A Substantial Likelihood on the Merits Warranting a Preliminary Injunction**

---

[4]In fact, IMP had informed the Court of its intentions to do so even sooner, on March 9, 2018, but had to first confer with counsel for MI, seek leave to join the Third Party Defendants [Doc. No. 83] and then File a Third Party Complaint [Doc. No. 89] against the Third Party Defendants in order to bring its Motion for Preliminary Injunction.

> (i) *IMP has prior rights in the MENUDO Mark because it obtained common law rights after Menudo International abandoned the trademark.*

IMP is the only party in this case that has used the MENUDO trademark in the last 9 years.[5] Nobody used the mark MENUDO at all between 2009 and 2014. *See* Doc. 90, Exhibit A at ¶ 12. IMP's common law rights in the MENUDO mark are valid and superior to any rights MI may have had in the past because MI has abandoned the MENUDO trademark. Any rights in the MENUDO trademark were abandoned by the MI's alleged predecessors between 1999 and 2004 and then again from 2008 and 2014.[6]

"A defendant must establish two elements in order to show that a plaintiff has abandoned his trademark: (1) that the plaintiff has ceased using the mark in dispute and (2) that he has done so with an intent not to resume its use." *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1329-1330 (11th Cir. 2008) quoting *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1173 (11th Cir. 2002). For the purposes of abandonment, the Lanham Act defines "use" as "the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. "***Non-use for 3 consecutive years shall be prima facie evidence of abandonment***." 15 U.S.C. § 1127 (emphasis added). *See also AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1550 (11th Cir. 1986) ("The proper inquiry is whether [plaintiff] intended to resume *meaningful* commercial use of the mark, not whether it intended to abandon the mark. ***Trademark rights flow from use, not from intent to protect rights***. Were the rule otherwise, a party could hold trademarks that it never intended to

---

[5] With the recent April 8, 2018 exception of the private event produced by Menudo International and/or Third Party Defendants.

[6] And, as a preliminary matter, the Plaintiff has major issues with proving that it ever acquired any rights at all. *See* IMP'S Post-Hearing Brief, Doc. No. 57-1, pp 10-12 (The Evidence Supporting The Plaintiff's Chain of Title Theory is Insufficient as A Matter Of Law).

use but did not want to allow others to use. The Lanham Act does not permit such warehousing of trademarks.") (emphasis added).

In this case, the record is clear that the MENUDO mark was not actually used by MI *in commerce* (or by any of its alleged predecessors) during at least two periods greater than 3 years: 1999-2004 (Oscar Lloyd's own testimony) and 2009-2017 (evidence in the record that has been verified time and time again). Accordingly, Menudo Entertainment's non-use between 2009-2012 is *prima facie* evidence of abandonment. 15 U.S.C. § 1127. As a result, any rights that Menudo Entertainment might have developed in the MENUDO trademarks through its 2006-2008 use was abandoned by 2012.[7] *Id.* Because neither MI (nor its alleged predecessors) used the mark in commerce after July in 2009, 2010, 2011, 2012, or 2013, IMP was first in time to resume use of the MENUDO trademark and now has rights unquestionably senior to MI's single April 2018 use of the MENUDO trademarks (which was an infringing use).

Once IMP established a *prima facie* case of abandonment as a result of the three-year dormancy, the burden then shifted to MI to demonstrate a bona-fide intent to resume use. "The burden of production, although not the ultimate burden of persuasion, shifts to [seller] 'to produce evidence that [it] either used the mark during the statutory period or intended to resume use." *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d at 1330. The Lanham Act directs that "[i]ntent not to resume [use] may be inferred from circumstances*."* 15 U.S.C. § 1127. Such an intent cannot be far-flung or indefinite; rather there must be an intent "to resume use within the reasonably foreseeable future," *Silverman v. CBS Inc.,* 870 F.2d 40, 46 (2d Cir. 1989).

---

[7]The attempt by Menudo Entertainment to assign its purported common law rights to Menudo International in Doc. 55 is futile because Menudo Entertainment abandoned its rights in the MENUDO mark back in 2012. In other words, Menudo Entertainment *has no rights to assign* to Menudo International.

MI has not carried its burden because its evidence is insufficient to establish any sort of recognizable intent to resume use in the Eleventh Circuit for at least four reasons. ***First***, MI argues that its royalty payments constitute sufficient use, relying on a Ninth Circuit case, *Herb v. Herb Reed Enters., LLC v. Fla Entm't Mgmt* 736 F.3d 1239 (9th Cir. 2013). As a preliminary matter, *Herb* is easily distinguishable because in that case.[8]. Moreover, the Eleventh Circuit has explicitly declined to adopt the Ninth Circuit standard of *Herb Reed*. *See Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1323 (11th Cir. 2011) (explaining that collecting royalties from the sale of records was not enough to give ownership rights over the marks); *See also Cumulus Media, Inc. v. Clear Channel Commc'n, Inc.*, 304 F.3d 1167, 1174 (11th Cir. 2002)(requiring more than "mere token use" to overcome abandonment, such as keeping up your association with the mark by using it on business cards or on a sign at your broadcasting studio). *See also Commodores Entertainment Corp. v. McClary*, No. 6:14-cv-1335-Orl-37GJK, 2014 U.S. Dist. LEXIS 147021, at *9 n.5 (M.D. Fla. Oct. 9, 2014)(determining that the defendant's reliance on *Herb Reed Enters*. To suggest that royalties are a genuine use of a mark to satisfy "use" was not on point, because this is not the position adopted by the Eleventh Circuit). Despite the fact that MI's allegation of its "royalties" from Sony is largely unsubstantiated and questionable at best, the Eleventh Circuit does not recognize such activity as "use" sufficient to overcome abandonment.

---

[8] Despite the fact that the Eleventh Circuit does not recognize royalties as a use in commerce, *Herb Reed* is further distinguishable from the case at hand. In *Herb Reed*, the Court determined royalties in that specific context could constitute "use" because the party alleging use was constrained by an agreement which prevented them from engaging in any other "use." *See Herb Reed Enterprises, LLC* 736 F.3d at 1248 (9th Cir. 2013)( determining that the receipt of royalties was a genuine but limited usage of the mark only when viewed within the totality of the circumstances—namely, that Reed was constrained by the settlement). Further, the party alleging use by royalties had introduced evidence that its substantial royalties were from domestic and international sales and had named a range of companies that paid royalties for original records in compilations, television ads, movies and other media. *See Id* at 1248. MI has yet to introduce any *actual* evidence of its royalties, as IMP has been continuously pointing out. *See* IMP's Post Hearing Brief (Doc. No. 56).

*Second,* MI's allegation that its "relationship with PAID Celebrity Services for online merchandising of posters, t-shirts, caps and other paraphernalia bearing the Menudo trademark" somehow constitutes a website that might constitute a bona fide use in commerce is confusing, and, more importantly, unsupported. *See* Doc. No. 98 at pg. 8. Not only is entering into an agreement to sell apparel *not a website*, but no evidence has been produced which shows any such proof that any merchandise was ever sold or offered to consumers for sale. *See* Doc. No. 90, Exhibit 2 at 215:67-70. Further, Mr. Tarnopol testified that he was unaware whether anyone managed a Menudo website between the years of 2009-2015. *See Id*.

*Third,* the changing of goods and services constitutes abandonment in this Circuit. *See Superior Consulting Services v. Shaklee Corp.*, No. 6:16-cv-2001-Orl-31GJK, 2017 U.S. Dist. LEXIS 101675, at *11 (M.D. Fla. June 30, 2017)(holding that the change in the nature of the goods and series offered under a mark – a change from the sale of nutritional supplements to blood testing—supports a claim of abandonment). In its attempts to allege "use" to rebut abandonment, MI's Response states that "ME's intention was always to create a new Menudo band." *See* Doc. No. 98 at pg. 8. Accordingly, MI's allegations of "intent to resume" use for a new Menudo band are not imputed on its usage of the MENUDO mark as it relates to live performances. *See* 3 McCarthy on Trademarks and Unfair Competition § 17:24 (4th ed.) ("a sudden and substantial change in the nature or quality of the goods sold under a mark may so change the nature of the thing symbolized that the mark becomes fraudulent and/or that the original rights are abandoned"). To be clear, IMP's common law rights are for the MENUDO mark is it pertains to live performances. Once MI (and/or its predecessors) abandoned the MENUDO mark for live performances, other uses in other classes are insufficient as a matter of law to allege use sufficient to overcome abandonment. *See Id*.

9

***Fourth***, MI elaborates on prospective deals with Nickelodeon (2015), Plural (2015) and Universal Cable Productions (2017) to demonstrate "use" (albeit not for live performances). *See* Doc. No. 98 at pg. 8. MI's argument that active consideration of when to reintroduce a brand corroborated by a business plan developed in 2016 is wholly insufficient to prove its intent to resume use in the reasonably foreseeable future. *See Silverman*, 870 F.2d at 46-47(abandonment claim cannot be defeated by simply asserting a vague, subjective intent to resume use of a mark at some unspecified future date). Further, what is meant by the "reasonably foreseeable future" varies depending on the industry and the particular circumstances of the case. *Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1060-61 (2d Cir. 1985). Notably, none of these "uses" relate to live performances of the band Menudo. MI cannot overcome the high burden of establishing use after an undisputed three (3) year period of abandonment by claiming that shopping around a business plan a few times throughout the years is any more than an isolated, token use made for the purpose of "warehousing" the marks. *See Exxon Corp. v. Humble Exploration Co.*, *695 F.2d 96, 100* (5th Cir. 1983) (isolated, token uses standing alone are legally insufficient to disprove abandonment). Accordingly, MI has provided no such evidence necessary to overcome its burden to disprove abandonment. *AmBrit* 812 F.2d at 1550.

Once a mark is abandoned it "falls into the public domain and is free for all to use. . . . Abandonment paves the way for future possession and property in any other person." J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 17:1 (4th ed. 2001); *see also Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 411 (9th Cir. 1996) ("Rather than countenancing the 'removal' or retirement of the abandoned mark from commercial speech, trademark law allows it to be used by another."). Thus, a defendant who successfully shows that

a plaintiff has abandoned a mark is free to use the mark without liability to the plaintiff. *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1173 (11th Cir. 2002).

IMP has invested significant sums of money, over $300,000.00, time and various resources in promoting and developing the MENUDO MANIA Marks. *See* Bruan Decl. at ¶21. Since 2015, IMP has produced, promoted and sold approximately 18 wildly popular concert events using the various MENUDO MANIA Marks, including the MENUDO trademark. The resurgence in popularity of the Menudo trademark is due solely to IMP's use.

MI's Response vaguely asserts that it has the "common law" rights in the MENUDO mark. *See* Doc. No. 98 at pg. 4. This single bald claim cannot provide an adequate basis to avoid the issuance of an injunction where MI fails to offer sufficient evidence that it ever had a legal intent to resume use of the trademark **within the three-year statutory period.** *See E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports, Inc.*, 756 F.2d 1525, 1533 (11th Cir. 1985)(finding that at the preliminary injunction stage, a weak record of evidence regarding an affirmative intent not to abandon is insufficient where a prima facie case of abandonment has been made). *See also Action Ink, Inc. v. New York Jets, LLC*, No. 12-46, 2013 U.S. Dist. LEXIS 119926, at *34 (E.D. La. June 20, 2013)(The only evidence presented to rebut the presumption of abandonment was vague, self-serving testimony. Thus, a lack of concrete evidence was inadequate to show an intent to resume use as a matter of law).

Any rights MI had in the MENUDO mark were abandoned and returned to the public domain for anyone, including IMP, to use. MI claims that IMP's usage of "MI's MENUDO Mark" brought public recognition to IMP. *See* Doc. No. 98 at pg. 5. However, IMP's first use of the MENUDO mark was in May 2015, *after* MI had already abandoned its rights. Thus, while MI is correct that IMP's usage of the MENUDO mark has garnered public recognition, that

11

acclaim only demonstrates that IMP has added value to a formerly abandoned trademark that it now successfully uses in commerce. The Eleventh Circuit has recognized that "the use of another's unregistered, i.e., common law, trademark can constitute a violation of § 43(a) where the alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a false representation that its goods came from the same source." *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512--13 (11th Cir. 1984).

      Here, it is clear that IMP has rights in and to the MENUDO Mark[9].. *See* Doc. No. 90, Exhibit 1 at ¶12 – 25; 42; 47; 52 – 53. No third parties have used the MENUDO trademark in commerce since July of 2009. *See Id*. at ¶ 11-12; 52.  IMP recognizes that the Menudo band was a popular Latin American teen musical group in the 1980s. However, given IMP's extensive and exclusive use since 2015 consumers have come to recognize IMP as the exclusive legitimate source of contemporary Menudo authentic performances.  Accordingly, IMP has established its ownership in the MENUDO trademark over MI, and as established in its Motion for Preliminary Injunction, each of the seven factors this Court must consider to determine whether the Third Party Defendants infringed on IMP's MENUDO Mark weigh only in IMP's favor. *See* Doc. No. 90.  IMP has therefore shown a probability of success on the merits of its trademark infringement claim.

> *(ii)   IMP has established a reasonable likelihood of succeeding on its tortious interference claims because the Third Party Defendants did not have any economic interest, making their conduct unjustifiable*

---

[9] While MI claims that IMP's Motion is "premised on a mark Menduomania", that is inaccurate. The Motion for Preliminary Injunction refers to a conglomerate of Menudo trademarks IMP has acquired common law rights to, including the name MENUDO. *See* Doc. No. 90 ("IMP's MENUDO trademarks (MENUDO, MENUDO MANIA, MENUDOMANIA FOREVER and MENUDOMANIA4EVER (collectively the "MENUDO MANIA Marks")").

An agreement between MI and the Third Party Defendants does not by itself absolve the Third Party Defendants from liability for their tortious interference, especially when neither MI nor the Third Party Defendants have any economic interest in IMP's relationship with its musicians.

Under Florida law, "[t]he elements of tortious interference with a contract or business relationship are: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385–86 (Fla. 4th DCA 1999) (citing *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985); *Procacci v. Zacco*, 402 So. 2d 425, 426 (Fla. 4th DCA 1981); Linafelt v. Bev, Inc., 662 So. 2d 986, 989 (Fla. 1st DCA 1995)).

With respect to the third of these four elements, a cause of action for wrongful interference with a business relationship is recognized when the interference is by one who is not a party to that relationship. *Fasco Indus. V. Armbruster Prods.,* 643 So. 2d 624 (4th Dist. 1994) (interference claim upheld because defendant was not a party to the contract). An interference is unjustified where the interfering defendant is a stranger to the business relationship. *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1312, 1320 (S.D. Fla. 2014) (internal quotation marks and citations omitted). To make a successful claim for tortious interference, **the interfering defendant must be a third party**, a stranger to the business relationship." *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001)(emphasis added) *Walter v. Jet Aviation Flight Services*, No. 9:16-CV-81238, 2017 U.S. Dist. LEXIS 119567, at *20-21 (S.D. Fla. July

31, 2017). An interfering defendant is a stranger when the defendant has no relationship with the parties to the contract at issue. *Id.* (finding that a defendant who is a party to the contract at issue cannot be found liable for interference). *See also XTEc, Inc. v. Hembree Consulting Services*, No. 14-21029-CIV-ALTONAGA, 2015 U.S. Dist. LEXIS 186513, at *8 (S.D. Fla. June 3, 2015)(Defendant failed to establish that its interference was not justified by failing to allege any facts which demonstrated it was not a stranger to counter-plaintiff's contract with third party).

MI attempts to argue that it is not liable for tortious interference because its conduct was done to protect its own economic interest. This argument is a red herring. Neither MI nor the Third Party Defendants have *any* economic interest in IMP's relationship with its artists. The fact that a contract between MI and the Third Party Defendants exists is entirely irrelevant; the relevant analysis focuses on whether the ***interfering defendants'*** (Trading Connections and Didier Hernandez) had a contractual relationship with IMP ***and its musicians***. It did not at the time it interfered. MI has failed to include any facts or evidence on the record that demonstrates how the Third Party Defendants had any such interest in IMP's relationship with its musicians. Doc. No. 98 at pg 9. This is because no such fact exists.

MI's conduct unjustifiably interferes with a contractual relationship between IMP and its musicians. This is evidenced by the fact that the musicians were required to agree to discontinue their relationship with IMP and no longer perform in IMP's shows. It is entirely unclear how this conduct can be seen to protect the Third Party Defendants or MI's own economic interest, when neither the Third Party Defendants nor MI had any economic interest in IMP's relationship with its musicians in the first place.

Not only has IMP established a likelihood of success on the merits in regards to its tortious interference claim, but an injunction is necessary because this conduct is precisely the

type of conduct the tort of tortious interference seeks to prevent. The cause of action for tortious interference with a business relationship "recognizes that economic relations are entitled to freedom from *unreasonable interference*." *United Yacht Brokers, Inc. v. Gillespie*, 377 So. 2d 668, 672 (Fla. 1979)(emphasis added). The point of a business relationship is to advance the interests of the parties involved. *Palm Beach County Health Care District v. Professional Medical Education, Inc.*, 13 So. 3d 1090, 1095, 34 Fla. L. Weekly 1379 (Dist. Ct. App. 2009). Tortious interference protects the interests of parties to an agreement against interference by outsiders, who would not be liable otherwise for breach. *Id*. IMP's relationships with its musicians are being continuously destroyed by an uninterested third party's interference[10]. This Court must grant the injunction to further prevent the rapid and irreparable damage that IMP is accruing as a result of the Third Party Defendants' poaching activities. *Heavener, Ogier Services v. R. W. Florida Region*, 418 So. 2d 1074 (Fla. Dist. Ct. App. 1982).

MI's final argument that competition by a competitor is not actionable is also misguided. Where a defendant has no prior economic interest of its own to safeguard but only a prospective business advantage that is *not yet realized*, **that defendant has no such privilege to interfere with an existing contrac**t. *See Id.*at 1076-77. An interferer's actions are tortious and actionable if the motive is purely malicious and not coupled with any legitimate competitive economic interest. *Id*. In such a situation, the interfered party's mere expectancy that the contract will continue outweighs a purely malicious motive. *Id*. (granting an injunction for tortious interference when facts alleging malicious intent and lack of any legitimate economic interest proved a claim of tortious interference was likely to succeed on the merits). The Third Party Defendants have required IMP's musicians to agree to no longer work with IMP on its 40th

---

[10] Since the time of filing its Motion for Preliminary Injunction, the Third Party Defendants have poached even more musicians, and MI has furthered this interference by unlawfully and unjustifiably preventing promoters from putting on IMP's 40th Anniversary Reunion Shows.

Anniversary Tour *even if* the Third Party Defendants do not put on a tour. This malicious interference does not present any legitimate competitive economic interest. Florida law demands that Mr. Hernandez and Trading Connections be enjoined from further interfering with the remaining relationships in place between IMP and its musicians. *Id*. IMP has established a likelihood of success on the merits pertaining to its tortious interference claim.

### 3. The Balance of Hardship Tips Sharply in IMP's Favor.

IMP has expended substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with its MENUDO trademark. *See* Doc. No. 90, Exhibit 1 at ¶ 21. Should the Defendants be permitted to continue their unlawful activities, IMP will suffer substantial losses and damage to its reputation and damage to its business relationships *See Id*. at ¶ 49; 53. The alleged (but documentarily unsupported) fact that "MI paid $240,000 for the Menudo trademark" has no bearing on the hardship IMP will face if this injunction is not granted. Moreover, MI's argument that this action is what is "holding them up" in using the trademark because of "IMP's competing use" further proves how MI will suffer no additional hardship if this injunction is granted.

The important fact to remember here is that IMP *remains to be the only party* who has continued to use the MENDUO trademark for live performances for many years, especially pertaining to reunion shows. At the time of filing the Preliminary Injunction, the Defendants had not produced a single performance using the infringing marks. Upon information and belief, MI has since put on one performance, further demonstrating the urgency and necessity to enjoin these offending parties for a brief four-month period. To do so in order for this Court to hear the evidence is not unduly prejudicial, and merely serves to remain the status quo.

### III. CONCLUSION

16

WHEREFORE, for the foregoing reasons, IMP respectfully requests that this Court enter an order temporarily enjoining MI, Trading Connections LLC, its members, officers, agents, licensees, servants, employees, attorneys and all other persons in active concert or participation with them, including but not limited to Didier Hernandez, from:

a. Using the MENUDO trademark to plan, promote, and/or put on a 40th Anniversary Menudo Reunion Tour and/or any live musical performances of any kind;

b. advertising or promoting any related live entertainment services using the MENUDO trademark or anything confusingly similar to the MENUDO trademark; and

c. licensing the MENUDO trademark to any third party.

2. Any further relief as the Court deems just and proper.

Respectfully Submitted,
/s/ Vivek Jayaram
Vivek Jayaram
Johanna Hyman
Jayaram Law Group, Ltd.
125 S. Clark Street, 17th Floor
Chicago, IL 60603
646-325-9855
Email: vivek@jayaramlaw.com
Email: Johanna@jayaramlaw.com
Counsel for In Miami Productions LLC
Admitted Pro Hac Vice

Joshua Ryan Alhalel
Alhalel Law
777 Brickell Avenue, Suite 600
Miami, FL 33131
305-563-9060
Email: josh@alhalel-law.com
Local Counsel

## CERTIFICATE OF SERVICE

   The undersigned certifies that on April 13, 2018 he filed the foregoing Reply in Support of its Motion for Preliminary Injunction using the Court's CM/ECF electronic filing, which will electronically serve all counsel of record:

WOLFE LAW MIAMI, P.A.
RICHARD WOLFE
175 SW 7 Street
Latitude One Offices
Suite 2410
Miami, Florida 33130
rwolfe@wolfelawmiami.com

T. 305.384.7370
F. 305.384.7371
M. 305.401.3639

/s/Vivek Jayaram
Vivek Jayaram, Esq.
Jayaram Law Group
125 S. Clark Street
17th Floor
Chicago, IL 60603
vivek@jayaramlaw.com
T: 646.325.9855
Counsel for Defendants

Joshua Ryan Alhalel
Alhalel Law
777 Brickell Avenue, Suite 600
Miami, FL 33131
305-563-9060
Email: josh@alhalel-law.com
Local Counsel
